Virginia CAIN, Plaintiff-Appellee,

v.

Robert McQUEEN et al.,
Defendants-Appellants.

Virginia CAIN,
Plaintiff-Appellee-Cross-Appellant,

v.

Robert McQUEEN et al.,
Defendants-Appellants-Cross-Appellees.

Virginia CAIN, Plaintiff-Appellee,

v.

Robert McQUEEN et al.,
Defendants-Appellants.

Nos. 76–1222, 76–1387 and 76–1439.

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1978.

Eugene J. Wait, Jr. (argued) of Wait, Shamberger, Georgeson & McQuaid, Reno, Nev., for Robert McQueen et al.

Jerry D. Anker (argued), Washington, D. C., for Virginia Cain.

Before TRASK and ANDERSON, Circuit Judges, and GRANT,* District Judge.

TRASK, Circuit Judge:

This appeal is taken by both plaintiff and defendants from an order of the district court denying defendants' motion to dismiss and granting limited summary judgment to plaintiff. Plaintiff's subsequent motion to amend the limited summary judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure was denied.

Jurisdiction in the district court was based upon 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3), (4). Appellant in her amended complaint also alleged that the defendant-trustees violated her rights under the First and Fourteenth Amendments to the Constitution of the United States and under Nev.Rev.Stat. § 391.3197 as it existed in March 1973.

The district court certified under Fed.R. Civ.P. Rule 54(b) that there was no just reason for delay for an appeal of the ruling on the motion for summary judgment and expressly directed the entry of the limited summary judgment.

Plaintiff was employed in November 1972 as a substitute teacher for the Washoe County School District in Reno, Nevada. In January 1973, she was given a full-time teaching position which was created by another teacher who had resigned. At that time she was given a standard employment contract, the same as that of any other teacher in the school district, except that it contained the following notation: "Contract starts January 16, 1973 and is for the remainder of the school year only."

Defendants contend that this notation placed plaintiff in a different status than other teachers, and made her merely a "short-term" employee. The fact is, however, that all teachers' contracts expire at the end of the school year. All such contracts, including plaintiff's, are expressly made subject "to the laws of the state of Nevada regarding public schools" whose laws give teachers certain rights to continued employment.

Nevada law (Nev.Rev.Stat. § 391.3197) provides that new teachers are put on probation annually for three years, provided their services are satisfactory, or they may be dismissed at any time at the discretion of the board.[1]

* Honorable Robert A. Grant, Senior United States District Judge, for the Northern District of Indiana, sitting by designation.

1. The statute at the time the plaintiff received notice of the termination of her probationary contract, Nev.Rev.Stat. § 391.3197 provided:

"1. Teachers employed by a board of trustees shall be on probation annually for 3 years, provided their services are satisfactory, or they may be dismissed at any time at the discretion of the board of trustees. A teacher employed on a probationary contract for the first three years of his employment shall not be entitled to be under the provisions of NRS 391.311 to 391.3196, inclusive.

"However, prior to formal action by the board, the probationary teacher shall be given the reasons for the recommendation to dismiss or not to renew the contract and be given the opportunity to reply."

The 1973 Legislature amended section 391.-3197 to provide as follows:

"391.3197 Probationary employees; Length of Probation; dismissal, refusal to reemploy; due process hearing.

"1. Teachers employed by a board of trustees shall be on probation annually for the first 3 consecutive years of employment unless on an approved leave of absence, provided their services are satisfactory, or they may be dismissed at any time at the discretion of the board.

"2. Any certificated employee who has achieved postprobationary status in a Nevada school district and is contracted in a second subsequent school district shall have a probationary period not to exceed 2 consecutive years of employment in that district.

"3. Prior to dismissal or nonrenewal, the teacher may obtain a due process hearing before the board or, at the discretion of the board, a hearing before a hearing officer or

The practice of the school district had been generally to provide a teacher with notice and a hearing before the nonrenewal of his or her contract. However, the district had recently adopted the practice of denominating certain teachers' contracts as "short-term" or "one year only," and consequently, claimed that Nev.Rev.Stat. § 391.-3197 did not apply to such employees. Defendants maintain that plaintiff was one of these "short-term" teachers and therefore was not entitled to the protection of the statute.

On March 19, 1973, plaintiff was notified by letter signed by the administrative assistant in charge of personnel that her contract would not be renewed. No reasons were given for the nonrenewal. Plaintiff then wrote a letter to the President of the Board of Trustees, defendant Pine, requesting a hearing before the board. Her request was denied.

While the plaintiff's request was pending before the board, some students and teachers wrote letters to the board requesting that plaintiff be retained. Defendant McQueen, a member of the board, indicated that he considered such action an organized "letter writing campaign rather than an out-pouring of spontaneous support," and it caused him to become "disenchanted" with plaintiff. He also indicated that he was "turned off" by her own request for a hearing. He expressed these views at a board meeting where plaintiff was discussed and informed the principal of Reno High School, where plaintiff was employed, that he would not be enthused about hiring her on a full-time basis.

In spite of this, the principal recommended plaintiff to fill a position to be left by a retiring teacher. At a board meeting held in August 1973, however, plaintiff's employment was discussed and the board determined not to employ her. At that time, defendants Pine and McQueen apparently expressed the view that plaintiff's husband made too much money and, since he was the dean of the college of education at the University of Nevada, Reno, it would be wrong to hire his wife while there were so many graduates of that college who would not get jobs. An informal vote was taken, and only two members favored hiring plaintiff.

McQueen telephoned the principal of Reno High School reminding him of his opposition to the hiring of plaintiff. In addition, Superintendent Picollo met with the principal and encouraged him to fill any vacancies with teachers who had "one year only" contracts or who requested transfer from other schools. When vacancies finally did become available, plaintiff was not recommended.

Defendants have never alleged that those selected were more qualified than plaintiff. On the contrary, Superintendent Picollo informed plaintiff that she "had received excellent recommendations" and that her "capability as a teacher had never been questioned." Both the head of the English department and the principal praised her teaching ability.

Plaintiff brought this action against the trustees in their official capacity and two of the trustees, Pine and McQueen, as individuals, claiming she was deprived of her job in violation of procedural due process and her substantive constitutional rights under the First and Fourteenth Amendments.

Defendants' motion to dismiss was based on their claim that plaintiff was a substitute teacher and therefore according to the express provisions of Nev.Rev.Stat. § 391.-3115, she was not entitled to the non-employment provisions of Nev.Rev.Stat. § 391.3197. In addition, they claimed the action should have been dismissed because plaintiff's complaint alleges that no more than two of the seven board members were

---

hearing commission as set out in NRS 391.-311 to 391.3196, inclusive. The appeal provisions of chapter 233B of NRS do not apply for a probationary teacher.

"The amended section became effective on July 1, 1973.

"Section 391.3197 was expressly made a part of plaintiff's contract with the Washoe County School District." C.T. at 249

motivated by constitutionally impermissible reasons.

The district court denied defendants' motion to dismiss and granted limited summary judgment for the plaintiff. The court held that Nev.Rev.Stat. § 391.3197 applied to plaintiff and that this statute gave her a "property" interest within the meaning of the Fourteenth Amendment and that she was entitled to a hearing as a matter of due process and under Nevada law. A hearing was consequently ordered. Plaintiff thereupon filed a motion to amend the judgment urging that her termination should be considered null and void and that she should be granted reinstatement and back pay. Plaintiff's motion was denied.

## I

For the procedural rights of plaintiff under the due process clause of the Fourteenth Amendment to have been violated, she must have possessed a property interest as contemplated by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A teacher has a property interest in his or her job not only when he or she has formal tenure under an express provision of a statute or contract, but also when applicable rules or practices establish a "clearly implied promise of continued employment." *Board of Regents v. Roth, id.* at 576–77, 92 S.Ct. at 2709.

Plaintiff claims that such a property interest was created by Nev.Rev.Stat. § 391.-3197.[2] Under that statute a "probationary" teacher, although lacking formal tenure, is entitled to be reappointed from year to year unless specific "reasons" are found for non-renewal. The court below accordingly held that Nev.Rev.Stat. § 391.3197, as it existed in 1973, "gave to probationary teachers a form of limited tenure and a right to know and reply to the reasons for termination."

Defendants contend that plaintiff was not a probationary teacher and therefore not entitled to the benefits and protections of Nev.Rev.Stat. § 391.3197. Rather, it is their position that she was a substitute teacher. They base this on the fact that the statute states that teachers are on "probation *annually.*" (Emphasis added.) From this, they conclude that a teacher becomes a probationary employee when granted an annual contract, rather than one for only a portion of a year as the plaintiff had in this case.

We find no merit in defendants' contention. It cannot be said that merely because plaintiff was hired after the school year started that she did not have an annual contract.

We agree with the district court which held that defendants' contention that plaintiff was a substitute teacher is erroneous as a matter of law. The court found:

"The undisputed facts show unequivocally that plaintiff was not a substitute teacher. She was a substitute teacher in the Washoe County School District from November 10, 1972, until sometime in December or January, 1972 [sic], hired on a day-to-day basis as needed. On January, 29, 1973, plaintiff entered into a contract with the Washoe County School District to serve as a teacher from January 16, 1973, 'for the remainder of the 1972–1973 school year only.' The contract is in the standard form then in use for teachers and expressly provides: 'The initial three years of service for the certificated employee shall constitute a probationary period during which time the employee may be dismissed at the discretion of the Board of Trustees pursuant to NRS 391.-3197.' Plaintiff thus became a probationary employee of the School District subject to all the rights of every probationary employee. The fact that she was hired to perform the services of another certificated teacher who had resigned does not place her in the category of substitute teacher." C.T. 268–69.

Irrespective of the procedural safeguards afforded by the Fourteenth Amendment due process, plaintiff was at least entitled to those procedural protections mentioned

---

**2.** Plaintiff's employment contract contained a specific reference to this statute.

in Nev.Rev.Stat. § 391.3197. The statute provides for an advance notice of "the reasons for the recommendation to dismiss or not to renew the contract" and an "opportunity to reply." The district court determined that the phrase "opportunity to reply" must be construed as contemplating a hearing since a "statement of reasons for termination and an opportunity to reply are meaningless unless there is some sort of hearing to resolve any issues which may be presented."

Nev.Rev.Stat. § 391.3197 was amended on July 1, 1973, to provide that "prior to dismissal or nonrenewal, the teacher may obtain a due process hearing . . . ." With regard to this amendment, which occurred after plaintiff's contract had not been renewed, the district court stated:

"As we interpret the law, the amendments made by the 1973 legislature with respect to NRS § 391.3197 were clarifying in character and did not materially change the rights of a probationary teacher." R.T. at 252.

In *McGee v. Humbolt County School Dist.*, 561 P.2d 458 (Nev.1977), the Supreme Court of Nevada determined that a probationary teacher "received all the process due" her when she "received notification of the reasons respondent [school district] was not rehiring her and was given an opportunity to reply at a *public hearing*." *Id.* at 459 (Emphasis added).

## II

Plaintiff contends that in addition to a hearing, she is entitled to reinstatement and back pay. This contention presents a difficult issue in which "a careful weighing of all facts and circumstances" must take place. *Burton v. Cascade School Dist. Union High School No. 5*, 512 F.2d 850, 853 (9th Cir. 1975). There must be a balancing of plaintiff's interests in her wrongfully terminated teaching position against the possible disruption which her reinstatement may cause the school district. *Id.* at 852–53.

The *Burton* case points out that reinstatement and back pay are appropriately granted in situations involving racial discrimination and the legal exercise of free expression in a manner critical of the employer. It is also an appropriate form of relief when used to discourage school systems from taking similar action against other teachers in the future. *Burton v. Cascade School Dist. Union High School No. 5, supra* at 853–54. In this case, plaintiff claims that her termination was partially the result of her request for a hearing. If so, this situation is strikingly similar to the situation where the employee is terminated because of the legal exercise of free expression in a manner critical of the employer.

Plaintiff argues that a court-ordered hearing held years after her employment was terminated does not "make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). This argument is especially valid in light of Nev. Rev.Stat. § 391.3197 which expressly requires that the notice of reasons and opportunity to reply be provided "prior to formal action by the board." This court has affirmed an order of a district court mandating officials to reinstate a college English instructor because his termination was in violation of his procedural due process rights under the Fourteenth Amendment. *Stewart v. Pearce*, 484 F.2d 1031 (9th Cir. 1973).

The Third Circuit has noted that a post-termination hearing is not an adequate substitute for a pre-termination hearing:

"But there is substantial difference in the position of the parties once termination has actually occurred. First, the employee, cut-off from the payroll, is greatly disadvantaged in his ability to pursue the hearing remedy. He may be forced by the necessity for survival to seek other employment which will foreclose the pursuit of reinstatement. Second, the institution will have made substitute teaching arrangements, thus introducing into the hearing consideration of the interests of other faculty members. This inevitability will increase whatever tendency may already exist for the hearing officials to defer to the administration's decision. We agree with the district court, therefore, that a hearing after the fact is not

the due process equivalent of the pre-termination hearing required by *Perry v. Sinderman* [408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570], *supra. See [Skehan v. Board of Trustees of Bloomsburg State College]* 3 Cir., 358 F.Supp. [430] at 434– 35." *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 38 (3d Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

An important consideration is the time lag between the wrongful termination and the hearing. In the *Skehan* case, *supra,* the Third Circuit noted that there is probably a greater likelihood that the original termination decision will be upheld if the hearing is held long after the event than if a hearing is held before the termination becomes effective. The Eighth Circuit recently held that a post-termination hearing held two years after the termination did not satisfy the requirements of due process. *Brown v. Bathke,* 566 F.2d 588 (8th Cir. 1977). In that case, plaintiff, a former high school teacher, was terminated without a hearing when defendants discovered that she, a single woman, had become pregnant. In the court-ordered hearing held more than two years after she was terminated, defendants voted to confirm their earlier action.

 Not all cases that have found violations of procedural due process and where hearings have been ordered have granted reinstatement and back pay, however. *E. g., Burton v. Cascade School Dist. Union High School No. 5,* 512 F.2d 850 (9th Cir. 1975); *Greene v. Howard University,* 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969). The disadvantage to the school district should be carefully considered.

The district court's order was as follows:

"1. Defendants' motion to dismiss is denied.

"2. A summary judgment will be entered in favor of plaintiff and against defendants requiring that defendants shall, within a reasonable time, accord to plaintiff the due process hearing contemplated by the foregoing opinion. The Court reserves jurisdiction to make such further orders in the premises as may be required to accord to plaintiff the full benefit of the rights to which she is entitled and will entertain supplemental pleadings if they should become necessary. It is the view of the Court that plaintiff's rights and remedies are primarily to be worked out by plaintiff and the Board of Trustees of the Washoe County School District except to the extent that the Court has been required to interject itself into the situation in order to recognize and enforce plaintiff's rights to due process of law.

"Dated: December 31, 1975." C.T. at 276.

We affirm that judgment.

As will be noted, the district court has reserved jurisdiction except insofar as the right of the plaintiff to a due process hearing. We note that this, although not mentioned explicitly, necessarily includes reinstatement and back pay. Because these claims have not been ruled upon, we defer our consideration thereof until the district court has ruled and that ruling, whatever it is, is properly before us.

Judgment accordingly.