E. Robert CORRIGAN et al.,
Plaintiffs, Appellants,

v.

Edward T. DONILON et al.,
Defendants, Appellees.

No. 80–1577.

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1980.

Decided Feb. 4, 1981.

Natale L. Urso, Westerly, R.I., with whom Thomas J. Liguori, Jr., Westerly, R.I., was on brief, for appellants.

Vincent J. Piccirilli, Providence, R.I., for appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Lila Mullins and Linda Pezza, two of the original sixteen plaintiffs in this action brought under 42 U.S.C. § 1983 and state law, appeal a decision of the district court

ordering that the Providence School Committee provide hearings, within 90 days, at which they may contest the School Committee's action in dismissing them from teaching positions. They challenge the district court's order as inadequately remedying the School Committee's violation both of their right under the fourteenth amendment not to be deprived of their property interests in employment as teachers without due process of law, and of their right under Rhode Island law, as tenured teachers, not to be discharged without "good and just cause." R.I.Gen.Laws § 16–13–3. We vacate the judgment of the district court and remand for further proceedings.

Mullins and Pezza are two of some 156 teachers in the Providence school system whose employment was terminated or suspended effective at the end of the 1976–1977 school year, by action of the Providence School Committee taken on February 17, 1977. A few days before that date, each of the two appellants, as well as others, was handed a letter, signed by the superintendent of schools, advising the recipient that a resolution would be presented to the Providence School Committee to terminate her employment at the end of the 1976–1977 school year. The reason given in the letters Mullins and Pezza received was that a teacher with greater seniority for whom they had allegedly served as long-term substitutes would be returning to employment. The letter informed the recipients that a meeting would be held on February 16 at which school administrators would explain the proposed action and the teachers' rights, and that "you are also invited to attend the School Committee meeting of February 17, 1977 and be heard by the Committee before the resolution is acted upon." It does not appear whether Mullins or Pezza attended either meeting. On February 18, 1977, each of them received a letter advising that pursuant to a resolution adopted by the School Committee on February 17, 1977, "your employment in the Providence Public School system as a long-term substitute is hereby terminated as of the last day of school in the second semester, June 1977," for the reason earlier stated.

Upon receiving these letters, appellants, along with a large number of other teachers, each requested a hearing before the School Committee. The Committee scheduled hearings to begin on June 3, 1977, and to continue on a number of subsequent dates, but the hearing dates were postponed several times for reasons unexplained by the Committee. Some of the teachers did eventually receive hearings, but by March 1978 when this suit was commenced, no hearing had yet been held on Mullins' and Pezza's terminations, nor have they been given a hearing since that date.

In an agreed statement of facts, entered into before trial, the parties stipulated that,

"3. Plaintiffs ... Lila Mullins, Linda Pezza ... served as certified public school teachers in Providence continuously and satisfactorily for at least three years prior to the 1976–77 school year."

"28. Plaintiffs Linda Pezza and Lila Mullins were not long-term substitutes during the 1976–77 school year."

The district court found, after trial, that "Mullins and Pezza were tenured teachers in February 1977," and that their status "as tenured teachers is different" under Rhode Island law from long-term substitutes. The court concluded that, under R.I.Gen.Laws § 16–13, a tenured teacher would be entitled "to a meaningful statement of cause for dismissal at least one month prior to the close of the school year," and upon request, a hearing before the full board. The court concluded also that "there is no statutory or constitutional requirement that a terminated teacher be provided a hearing prior to notification of termination," and that appellants "do not argue that the form of statement of cause furnished them is for any reason inadequate." Finding that appellants had not yet been given the hearing due them under state law, the court—without ruling expressly on appellants' claim of denial of due process—simply ordered that the School Committee give appellants a hearing within 90 days.

Pezza and Mullins now argue that a post-termination hearing at this late date will

not fulfill the requirements of procedural due process under the fourteenth amendment and Rhode Island law. They also contend in light of the court's findings of tenured status, and the absence of proof of just cause for termination, that they were entitled to reinstatement both under Rhode Island law and on substantive due process grounds.

We agree with appellants that the district court should have ruled that Pezza and Mullins were improperly discharged, and were entitled to appropriate relief on that basis. Chapter 16–13 of the General Laws of Rhode Island provide as follows:

"16–13–3. Probationary period—Tenure after probation.—Three (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers who have given satisfactory service for three (3) years prior to April 24, 1946, and [thereafter] those who shall complete the probationary period, shall be considered in continuing service. No such teacher shall be dismissed except for good and just cause.

"16–13–4. Hearing on dismissal for cause—Appeals—Statement of cause for dismissal shall be given the teacher in writing by the governing body of the schools at least one (1) month prior to the close of the school year. The teacher, may, within fifteen (15) days of such notification, request in writing, a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court.

"16–13–6. Suspension because of decrease in school population—Seniority—Reinstatement.—A school board may, by reason of a substantial decrease of pupil population, within its school system, suspend teachers in such numbers as are necessitated by the decrease in pupil population; provided, however, that such suspension of teachers shall be in the inverse order of their employment unless it is necessary to retain certain teachers of technical subjects whose places cannot be filled by teachers of earlier appointment; and, provided, further, that such teachers as are suspended, shall be reinstated in the inverse order of their suspension. No new appointments shall be made while there are available teachers so suspended."

Given the facts to which the parties agreed before trial, this statute indicates—as the district court found—that Mullins and Pezza were, at the time of their purported termination[1] tenured teachers who possessed a statutory entitlement to their positions in the absence of "good and just cause" for dismissal. However, the only reason given for their dismissal was that as purported long-term substitutes they were being replaced by more senior teachers. This plainly did not amount to "good and just cause" under R.I.Gen.Laws 16–13–3 for dismissal of a tenured teacher.

It is clear, therefore, that appellants were wrongly terminated under Rhode Island law, and we see no point in requiring appellants to undergo a hearing before the School Board as ordered by the district court. All the Board could do at such a hearing to justify the discharge would be to retract the very facts to which it stipulated in the district court.[2] Given the due process

---

1. Appellants were not told they were suspended; if this is what the School Board meant to do, it could have said so in the district court. It did not do so.

2. The School Committee's likely shifting of position is suggested in its argument to us that,

"Despite the stipulation of fact, Paragraph 28, it seems both appellants were in fact appointed as long-term substitutes for the 1976–77 school year." This attempted change of position is unsupportable. The Committee did not seek release by the district court from its stipulation, and, if anything is plain, it is that facts accept-

violation discussed *infra*, we think it has no right to that opportunity.

We realize that the state law provides for a unique series of procedures for adjudicating a teacher's status, starting with a plenary hearing before the School Board, proceeding through an appeal to the state department of education, and ending with review in the state superior court. Normally these procedures would provide the exclusive avenue for adjudicating appellants' employment status. The present case, however, comes before us not merely in the exercise of our pendent jurisdiction over a state law claim, but in the exercise of our jurisdiction over appellants' federal due process claim; and these two facets of our jurisdiction interact in the circumstances.

Had appellants been afforded a prompt hearing before the School Board at which they could have contested their alleged status as long-term substitutes, they would have had no occasion to invoke federal jurisdiction for lack of procedural due process under 42 U.S.C. § 1983. The state procedures, if followed in a timely manner, would have fully met, indeed, would have exceeded, constitutional due process standards. But timely procedures were not afforded. A full year elapsed before the bringing of this suit during which the School Committee kept postponing hearings.[3] Over three years have now elapsed without hearings. And to all appearances, confusion still reigns supreme as to the actual theory upon which appellants were discharged, and as to the reasons for their discharge. Not only have counsel recently sought to repudiate their trial stipulation as to appellants' status, but they state that "plaintiffs will be informed as to the precise reason for the non-renewal of their contract" at the time that the long-delayed

administrative hearing is held, and not, it seems, before.

■ This shilly-shallying clearly does not meet federal due process standards. Appellants' tenured status under state law was an entitlement amounting to a constitutionally protected property interest. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Putting aside niceties such as whether a hearing need be held pre-termination or post-termination, the failure to offer *any* hearing within the year prior to the bringing of this suit, coupled with the failure to give notice of any reason sufficient for discharge of a tenured teacher, amounted to a failure to provide notice and hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

Appellants thus appear before us both as persons whose constitutional rights to due process were violated and as teachers who, by stipulation of the School Board itself, were not long-term substitutes and hence could not be properly discharged under state law other than for cause, of which none appears. Under such circumstances it would be unjust to make appellants relitigate their employment claim before the very School Committee which has been so careless in its attention to their rights both under state law and the federal constitution. *Cain v. McQueen*, 580 F.2d 1001, 1006 (9th Cir. 1978); *Brown v. Bathke*, 566 F.2d 588, 592 (8th Cir. 1977); *see also Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 38 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975). To permit the

ed in the district court cannot be litigated on appeal. If a mistake were made, the School Committee must now bear the burden; if not, there would never be an end to relitigation.

**3.** An argument could, perhaps, have been made that the February 17, 1977 meeting of the School Committee, which appellants were invited to attend, satisfied the constitutional requirement of a hearing even though it did not

fulfill the mandate of state law. Defendants, however, have not made that argument in this court or below, nor did they offer any evidence of the procedures employed at that meeting, by which the district court could have evaluated its adequacy as a hearing. We view any issue which could be made over this point as by now foreclosed, and not subject to consideration in the remanded proceeding.

Committee to rule on appellants' employment status now would be to permit it to repudiate the very facts on which it has so far proceeded and would result in both judicial inefficiency and an undeserved burden on appellants.

We rule, therefore, on the basis of the clear record before us that the actions taken by the School Committee in 1977 were ineffective to terminate appellants' employment status. The judgment below must be vacated as respects the two appellants, and the case remanded to the district court with directions to determine, in light of our ruling, what relief is now appropriate by way of back pay and injunction requiring continued employment. Counsel for the School Board have suggested at argument that one or both appellants may have been offered, and thereupon refused, reinstatement at some time after being let go in 1977. The district court may give due consideration to this and other matters which may or may not be ground for limitation on the type and quantum of relief that is appropriate. *Compare Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 491 (1st Cir. 1979); *Perez v. Rodriguez Bou,* 575 F.2d 21, 25 (1st Cir. 1978).

As appellants have prevailed, they are entitled to request and receive reasonable attorneys' fees, 42 U.S.C. § 1988, and the district court is, of course, empowered to establish such fees for services in this court as well as in the district court.

*Vacated and remanded for further proceedings in accordance herewith.*