659 P.2d 96

Norma WEBSTER, Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 25, BANNOCK COUNTY, POCATELLO, Idaho, Defendant-Respondent.

No. 13851.

Supreme Court of Idaho.

Feb. 9, 1983.

Joseph M. Coulter, Pocatello, for plaintiff-appellant.

Byron J. Johnson, Boise, for amicus curiae, Idaho Educ. Ass'n.

Wesley F. Merrill of Merrill & Merrill, Pocatello, for defendant-respondent.

DONALDSON, Chief Justice.

Appellant, Norma Webster, was employed as a teacher for the 1976–77 school year by the Board of Trustees of School District No. 25. During that year, periodic teacher evaluations and written reports were made concerning Webster's teaching.

In the spring of 1977, the Board, following a recommendation received from the principal of the school where appellant worked, placed Webster on probation. She received notification of her probation by letter dated April 6, 1977. The notification did not indicate when the probation would end. Thereafter, she was offered and accepted a contract for the 1977–78 school year. The evaluation of Webster continued during that second year and she was informed by letter dated May 12, 1978, that she would not be offered a contract for the 1978–79 school year. This letter informed her of the reasons for such action and advised her of her right under I.C. § 33–513(5) to request an informal review by the Board. Upon receiving her request, the Board conducted an informal review. After the review, the Board's decision not to offer a teaching contract remained unchanged.

Webster filed suit alleging violations of her statutory due process rights under I.C. § 33–513(5) and seeking reinstatement for the 1978–79 school year and damages. After a trial to the court, a memorandum decision was filed. Judgment was entered and filed in favor of the Board. Webster appeals. We affirm.

The central focus of this case is the construction of I.C. § 33–513(5). Specifically, what statutory rights are granted by this section to certificated employees who are not on renewable contracts pursuant to I.C. § 33–1212. An ancillary question arises: what, if any, procedural due process rights accrue to the benefit of an employee under § 33–513(5).

As applicable to this cause, I.C. § 33–513(5), 1976 Idaho Sess.Laws ch. 86, p. 293, 295–96 (currently I.C. § 33–513(6)), provided the board of trustees of the school district with the following powers and duties:

"[t]o establish criteria and procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract, as provided for in section 33–1212, Idaho Code. Such procedures shall require at least one (1) evaluation prior to the beginning of the second semester of the school year, and

when any such teacher's work is found to be unsatisfactory a probationary period shall be established which shall continue until the time for the reissuing of the yearly contract as provided in this paragraph. This procedure shall not preclude recognition of unsatisfactory work at a subsequent evaluation and the establishment of a reasonable period of probation. In all instances, the teacher shall be duly notified in writing of the areas of work which are deficient, including the conditions of probation. Until the third year of continuous employment by the same school district, including any specially chartered district, each such certificated employee shall be given notice, in writing, whether he will be reemployed for the next ensuing year. Such notice shall be given by the board of trustees no later than the fifteenth day of May of each such year. If the board of trustees has decided not to reemploy the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees."

■ The prime function of this Court when construing a statute is to ascertain and give effect to the legislative intent. *E.g., Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861 (1980); *Idaho Public Utilities Commission v. V–1 Oil Company,* 90 Idaho 415, 420, 412 P.2d 581, 583 (1966). It is argued that Webster's procedural due process rights were violated when she was given no written notice of probation during the 1977–78 school year. To clarify the situa-

tion, Webster does not have an interest which gives rise to a full due process analysis under the fourteenth amendment to the United States Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The procedural due process rights involved in this case have their genesis in the statute and not the United States Constitution. We are concerned with what procedural rights are granted by § 33–513(5) and whether Webster was accorded the protection offered by these rights.

■ From the language of the statute, a probation period is mandated if a teacher's work is found to be unsatisfactory during an evaluation prior to the beginning of the second semester. The probation in such instance shall continue until the time for the reissuing of contracts as provided by the statute. It is argued that the probation thereby established is curtailed as a matter of law by the offer of a new contract. We do not agree. We are of the opinion that the probation period established by this provision is at minimum to run until the time for reissuing of contracts and that the board is not precluded from continuing a probation from one year to another. We find support for this conclusion in the following language of the statute which qualifies the above procedure: "This procedure shall not preclude recognition of unsatisfactory work at a subsequent evaluation and the establishment of a *reasonable period of probation.*" (Emphasis added.) Webster was placed on probation in the spring of 1977 pursuant to the immediately preceding quoted language of the statute.[1] There-

---

1. The body of the letter dated April 6, 1977, which provided notice of Webster's probation read:

   "Pursuant to the rules and regulations of the Idaho State Board of Education you are hereby notified that on the 23rd day of March, 1977, the Board of Trustees, School District No. 25, at a properly constituted meeting, approved Mr. Hammond's recommendation, dated March 21, 1977, that you be placed on probation. Poor student control and program management, lack of communication with the administration, and general

weaknesses in teacher/pupil relationships are the reasons for placing you on probation.
   "The Board of Trustees hope that this probationary period will be a period of growth and development in these areas. Since education of the students of School District No. 25 is our paramount concern, they pledge support of the administration and supervisory personnel in assisting you.
   "Mr. Hammond will establish a program of supervision utilizing resources in School District No. 25 that will assist you. To keep you and the Board of Trustees informed of your

fore, she was entitled to a "reasonable period of probation." From our examination of the record, we conclude that there was substantial competent evidence to support the trial court's implicit finding that the probation established in the spring of 1977 was still in effect during the 1977–78 school year. This finding has not been shown to be clearly erroneous and will not be disturbed on appeal. I.R.C.P. 52(a).

■ Under § 33–513(5) Webster was also entitled to written notice of the board's decision not to renew her contract including a statement of reasons and the opportunity for an informal review by the board of its decision.[2] The record supports the trial court's findings that Webster was accorded these rights.[3]

■ We next consider Webster's contention that the trial court erred by excluding rebuttal testimony of a witness offered by Webster concerning her performance as a teacher. Webster failed to contest the validity of the reasons for nonrenewal at the informal review and the propriety of the board's decision based upon these reasons was not at issue before the trial court—the question was whether Webster was provided her procedural rights. Therefore, the exclusion of testimony concerning Webster's performance as a teacher by the trial court was proper on grounds of relevancy and materiality. *See Mountain States Tel.*

& *Tel. Co. v. Jones,* 76 Idaho 241, 280 P.2d 1067 (1955); *Williams v. Idaho Potato Starch Co.,* 73 Idaho 13, 245 P.2d 1045 (1952); *Adamson v. Mattson,* 32 Idaho 493, 185 P. 553 (1919).

No costs allowed.

Affirmed.

BAKES, McFADDEN and SHEPARD, JJ., concur.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.

BISTLINE, Justice, dissenting.

If I were to vote to affirm the district court judgment, it would have to be on the basis of the argument of counsel for the School Board that:

"[T]here is no precondition of probation before the Board of Trustees can determine not to offer a contract to a teacher under § 33–513(5), who is on a year-to-year non-renewable basis.

"Section 33–513(5) has no language whatever that provides that a probation period must come within the time immediately preceding the offering of a new contract for a new year, and has no language that provides that any probation period at all is a precondition to whether or not the Board of Trustees will offer a contract to a non-continuing contract teacher. It is sub-

---

progress, Mr. Hammond will submit evaluation reports on a regular basis."

2. The body of the letter dated May 12, 1978, which provided notice of the board's decision not to renew read:

"On April 6, 1977, you were notified of the action taken by the Board of Trustees placing you on probation. This probationary action was on Mr. Dale Hammond's recommendation because of your performance in the classroom. Your poor performance was outlined in that correspondence as poor student control, program management, lack of communication with the administration, and general weaknesses in teacher/pupil relationships.

"Mr. Hammond, at the direction of the Board of Trustees, did establish a program of supervision in order to assist you in overcoming these problem areas. Periodically, Mr. Hammond submitted to Mr. Strah evaluation reports outlining your progress. These eval-

uation reports have been related to the Board of Trustees.

"Unfortunately, your progress in these problem areas has not been corrected to the satisfaction of the administration and therefore, the Board of Trustees has acted upon Mr. Hammond's recommendation and you will not be offered a teaching contract for the 1978–79 school year.

"Pursuant to Idaho Code Section 33–513, you have the right to request and be given the opportunity for an informal review of this decision by the Board of Trustees."

3. Webster requested an informal review which was provided as reflected by a letter admitted into evidence addressed to her from the chairman of the board of trustees, Boyd Neider, dated June 6, 1978. This letter advised Webster that the board adhered to its original decision not to renew.

mitted that appellant's premise is in error and the unambiguous statutory language of the Idaho Code requires no such probation under the circumstances.

"The basic principle of statutory construction is that clear, unambiguous statutory language must be given effect (*State v. Riley,* 83 Idaho 346, 362 P.2d 1075 (1961); *Moon v. Investment Board,* 97 Idaho 595, 548 P.2d 861 (1976); *State v. Groseclose,* 67 Idaho 71, 171 P.2d 863 (1946)). It is likewise the duty of the court to construe the legislative intent when the meaning of a statute is called into question. This technique has been approved in the past. In *Meyers v. City of Idaho Falls,* 52 Idaho 81, 11 P.2d 626 (1932), the court held:

" 'In attempting to arrive at legislative intent, "the endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time. With this purpose in view, therefore, it is proper to consider not only acts passed at the same session of the legislature, but also acts passed at prior or subsequent sessions, and even those which have been repealed." This canon of investigation has already been adopted by this court.'

"See also: *Local 1494 of the International Assoc. of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346; *Sunset Memorial Garden v. Idaho State Tax Commission,* 80 Idaho 206, 327 P.2d 766 (1958); *State v. Martinez,* 43 Idaho 180, 250 P. 239 (1926).

"A review of the legislative history of § 33–513(5) will clearly show that a probationary period was never contemplated nor enacted by the legislature as a prerequisite for a determination not to offer a contract to a 'non-renewable contract' teacher.

"Under the laws of the state of Idaho, there are actually two categories of teachers; for the first three years with the school district, said teacher is a 'non-renewable' or 'non-contract' teacher under the provisions of § 33–513. Thereupon, if the teacher is granted a contract for the fourth year, the teacher becomes a 'renewable' or 'contract' teacher, pursuant to § 33–1212 et seq, wherein the teacher has certain rights to automatic renewal of the contract.

"In the instant case, appellant was in the period of time covered by the first three years with the school district.

"The history of § 33–513 shows that the first change applicable to this action occurred in 1973, by 1973 Session Laws, Chapter 126. Section 33–513 begins with the following language:

" 'The board of trustees of each school district including any specially chartered district, shall have the following powers and duties:'

"The 1973 Session Laws added the entire subparagraph (4) as follows:

" '(4) To develop guidelines and procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract, as provided for in § 33–1212, I.C. Until the third year of continuous employment by the same school district, including any specially chartered district, each such certificated employee shall be given notice, in writing, whether he will be reemployed for the next ensuing year. Such notice shall be given by the board of trustees no later than the 15th day of May of each such year. If the board of trustees has decided not to reemploy the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees . . . .'

"This sets up a procedure for the supervision and evaluation of teachers during their first three years with the same school district. It also provides that a district shall give notice whether or not the teacher will be reemployed. This is the basic beginning of the requirement that the school district have a procedure to help supervise and to help evaluate the teachers during their first three years.

"It should also be noted that in the 1973 Session Laws, the same bill, being Chapter 126, the legislature amended § 33–1212 ('contract' teacher section) to provide:

" 'Before a board of trustees can determine not to renew the contract of any certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, such person shall be entitled to a probationary period. This period of probation shall be preceded by a written notice from the board of trustees with reasons for such probationary period and with provisions for adequate supervision and evaluation of the person's performance during the probationary period. Such period of probation shall not effect the person's renewable contract status.'

"It is important to notice that although both sections were amended in the same bill by the same legislature, only § 33–1212 sets out the requirement that probation be granted before determination not to renew the contract. The amendments to § 33–513 did not do this. The 1973 legislature merely required that the district set up criteria for supervision and evaluation of these new teachers. Nothing else.

"The next activity occurred in 1975, when § 33–513 was again amended to provide under the language in subsection 4, (which is placed in italics) the following:

" '*To establish criteria and procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract, as provided for in § 33–1212, Idaho Code. Such procedure shall require at least one (1) evaluation prior to the beginning of the second semester of the school year, and when any such teacher's work is found to be unsatisfactory, a probationary period shall be established which shall continue until the time for the reissuing of the yearly contract as provided in this paragraph. In all instances, the teacher shall be duly notified in writing of the areas of work which are deficient, including the conditions of probation.* Until the third year of continuous employment by the same school district, including any specially chartered district, each such certificated employee shall be given notice, in writing whether he will be reemployed for the next ensuing year. Such notice shall be given by the board of trustees no later than the 15th day of May of each such year. If the board of trustees has decided not to reemploy the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees.'

"The balance of the paragraph (placed in regular type above) was left as it was.

"The 1973 language set up no criteria or minimum standards that the district must follow to develop the guidelines or procedures. Therefore, to avoid the possibility that the language was too uncertain and lacking detail or standards to be enforceable, and to clarify the prior language, changes were made in 1975, to attempt to cure that deficiency. (See: Statement of Purpose, RS 0102, Bill No. 237.) It is to be noted that the new change in 1975 did not change the basic difference between § 33–513 and § 33–1212 concerning whether probation is required before the determination as to whether or not a contract for the next year will be granted. It does not 'tie in' probation with the refusal of or the offering of a contract for the next year.

"In 1976, by Chapter 86, the legislature set up the current numbering of the subparagraphs to the end that the portion now under consideration in this case, was numbered subparagraph five (5). There were no other changes.

"In 1978, effective July 1, 1978 and therefore not involved herein, subparagraph five (5) was further amended in particulars not involved in the controversy before this court.

"This history is important because it shows three things: (1) what is now § 33–513(5) was designed to have the district develop a program of supervision and evaluation of new teachers, for the help of those

new teachers; (2) no change was ever made in the authority of the board of trustees to offer or not to offer a contract for the next year; (3) in 1973, the statute regarding 'contract' teachers granted a prerequisite of probation before refusal to renew the contract, whereas the statute regarding 'non-contract' or 'non-renewable contract' teachers was never so amended and never did provide for such a prerequisite.

"The comparison between § 33–513 and § 33–1212 is likewise helpful in that, if probation immediately before contract time is read into § 33–513, then the 'non-renewable contract' teacher and the 'contract' teacher have exactly the same rights to reemployment, and the district has, by granting the first year's contract, become obligated for the balance of the teaching life of the teacher. Actually, the full three years are a 'probationary period', with the rights of the district to determine if the individual is the type of 'permanent' teacher the district wants. It is not logical to require that there be, in effect, a double probation.

"During the first three years, the teacher has only the right to a contract for one year, and has not acquired any legally protected specific benefits or 'rights' to be re-hired. During comparable periods, the Supreme Court of the United States has determined that, absent statutory language, the teacher does not have a legal right to be rehired nor to be given reasons or a hearing when not rehired (*Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972)). Therefore, for these first three years the teacher has no property right whatever or requirement that she be rehired. This is distinguished from the 'continuing contract' teacher under § 33–1212, which teacher has a right of automatic renewal and has a continuing contract. (Compare: *Robinson v. Joint School District No. 150*, 100 Idaho 263, 596 P.2d 436 (1979)).

"Section 33–513 has no language that provides that any probation period must come within the time immediately preceding the question of offering a contract for a new year, nor is there any language that the decision to not renew a teacher's contract must be based upon any evaluation or probation condition.

"In sum, the legislative history of Idaho Code § 33–513(5) shows that the legislature amended the above section several times to establish a course of conduct to be followed by school districts in supervising and upgrading the teaching profession, especially for those teachers who have not worked for the same school district for three years.

"Paraphrased, that section provides that the board of trustees shall have the power and duty to:

"1. Establish criteria and procedures for the supervision and evaluation of teachers.

"2. One valuation must be made prior to the beginning of the second semester.

"3. That if the teacher's work is unsatisfactory, a probationary period must be established.

"4. Subsequent evaluations and probationary periods may be established.

"5. The teacher must be notified in writing of the deficiencies and conditions of probation.

"However, at no place within said section is it provided that it is necessary to follow such evaluation procedures before a second or third contract can be denied by the board. At no place does it provide that the teacher must be evaluated as unsatisfactory before a second or third year contract can be denied by the board. At no place is it provided that the board shall use only reasons for non-renewal of the second or third year contracts that are found from said evaluation procedure.

"That section only provides that, until the third year of continuous contracts by the school district, each teacher shall be given written notice whether she will or will not be reemployed for the next ensuing year by no later than May 15.

"If the Board of Trustees has decided not to reemploy the teacher, the notice must state the reasons for such decision and the teacher shall be given the opportunity for an informal review of such decision.

"The legislative-drawn distinction is clear between a 'non-contract' teacher and a 'contract' teacher. Idaho Code § 33–1212 requires that, in specific language, the board cannot refuse to renew a contract unless the teacher has been placed on a probationary period and under supervision. Section 33–513(5) has no such precondition applicable to 'non-contract' teachers such as the appellant herein.

"While not exactly in point on its facts, the legislative intent disclosed in the case of *Turner v. Board of Trustees* [16 Cal.3d 818, 129 Cal.Rptr. 443], 548 P.2d 1115 (Cal.) concerning their treatment of probationary and vested teachers is supportive of the disclosed Idaho legislative intent. The *Turner* case provided, beginning 129 Cal.Rptr. at p. 447, 548 P.2d] at p. 1119, as follows:

" 'Our school system is established not to provide jobs for teachers but rather to educate the young. Establishing a test for teachers to prove themselves is essential to a good education system. While refusal to grant total job security at the time of initial hiring may be repugnant to those pursuing a teaching career, repeated statutory amendments related to probationary teachers rights * * * reveals that the legislature has been well aware of the delicate balancing necessary to accommodate the sometimes competing interests.

" 'Examination of existing statutes convinces us the legislature has not seen fit to grant probationary teachers a vested right to be rehired * * * '

"There being no precondition that probation must be granted before the Board of Trustees can exercise its statutory discretion whether to offer reemployment or not, appellant's case must fall, and the trial court be affirmed." Respondent's Brief, pp. 8–15.

It was on this basis that the trial court, Judge Hargraves, ruled for the School Board, and one can safely assume that he had the benefit of the same brief which the School Board has filed here—at least on the point on which the lower court ruled.

The Court in its opinion, however, and I believe justifiably, as based upon first blush similarities found in the statutory procedures applicable to continuing and non-continuing contract teachers, has reached independent grounds and reasoning in upholding the district court. In doing so, the Court, to my mind, incorrectly divines the legislative intent, or at least does so in a manner with which I am unable to agree. If it be accepted, as appears to be the Court's position, that Webster has some due process rights under the statutory provisions, then I would have to conclude that such were not awarded her.

Putting aside the contentions of the respondent School Board upon which it would have us affirm the district court, and reaching only for a proper interpretation of the statutory scheme, it follows that our decision should turn upon the proper construction of I.C. § 33–513(5) and its two provisions regarding the probation of teachers who are not employed on a continuing or renewable contract. The first provision provides that "*at least one* (1) evaluation [is required] prior to the beginning of the second semester of the school year, and when any such teacher's work is found to be unsatisfactory a probationary period shall be established which shall continue until the time for the reissuing of the yearly contract . . . ." (Emphasis added.) The majority reads into this rather straightforward language that a probationary period so established under this provision "is *at minimum* to run until the time for reissuing of contracts and that the board is not precluded from continuing a probation from one year to another." (Emphasis added.) The majority purports to find support for its expanding conclusion in a further (and almost parenthetical) provision of the statute, which immediately follows the first above quoted language: "This procedure shall not preclude recognition of unsatisfactory work at a subsequent evaluation and the establishment of a reasonable period of probation." The majority does not explain and I do not understand how the latter provision supports the majority's conclusion.

The majority notes that Webster was placed on probation pursuant to the second provision—she was placed on probation during the second semester of the school year.[1] Thus, the majority concludes that pursuant to that provision Webster "was entitled to a 'reasonable period of probation.'" I believe that she was entitled to more than that.

The statute states that the first provision regarding probation "shall not preclude . . . *the establishment* of a reasonable period of probation." I.C. § 33–513(5) (emphasis added). Read in context, the plain language of the statute suggests that the Board of Trustees is required to establish a fixed period of probation. Although this argument was not raised by either the appellant or amicus curiae, I believe it suggests the proper interpretation of I.C. § 33–513(5).

In *Robinson v. Joint School District No. 150,* 100 Idaho 263, 596 P.2d 436 (1979), this Court construed I.C. § 33–1212, which establishes probation procedures for teachers on renewable contracts and provides in part:

"Before a board of trustees can determine not to renew the contract of any certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, such person shall be entitled to a probationary period. This period of probation shall be preceded by a written notice from the board of trustees with reasons for such probationary period and with provisions for adequate supervision and evaluation of the person's performance during the probationary period. Such period of probation shall not affect the person's renewable contract status."

In dicta, the Court stated: "*The duration of the period was to be set in a written notice* from the district board of trustees in which the teacher was to be advised of the reasons for imposing the probation . . . ." *Id.* at 266, 596 P.2d at 439 (emphasis added). Although the Court was interpreting I.C. § 33–1212 and not § 33–513(5), the language of the two sections is comparable, neither explicitly requiring the duration of the probation period to be fixed. Under the circumstances, it would be appropriate to interpret I.C. § 33–513(5) as requiring the Board of Trustees to establish a probation period of fixed duration. Furthermore, since the procedures set forth in I.C. § 33–513(5) were added by the legislature to provide protections which are not required by due process for teachers not employed on renewable contracts,[2] *compare Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *with* I.C. § 33–513(5), such an interpretation would

1. I.C. § 33–513(5) provides that boards of trustees have the power and duty to establish "procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract," but that those procedures "shall require at least one (1) evaluation prior to the beginning of the second semester of the school year . . . ." In this case, the Board had established procedures for the evaluation of teachers on nonrenewable contract status. Those procedures provide that during the first year of employment, such teachers "will be formally evaluated at least three (3) times. The first evaluation must be completed prior to the beginning of the second semester of the school year. The two (2) remaining evaluations must be completed prior to March 15th." Thus, I.C. § 33–513(5) does not preclude and the procedures established by the Board clearly contemplate evaluations of untenured teachers during the second semester.

2. As noted *supra* n. 1, I.C. § 33–513(5) authorizes boards of trustees to establish procedures to evaluate nontenured teachers. The statute,

however, only sets forth the minimum protections which may be provided to such teachers.

It is interesting to note that the Board in this case provided additional protections to nontenured teachers. The Board's policy states: "If a principal is considering recommending that a teacher who is employed on a non-renewable contract status be placed on probation, the principal, who shall have conferred with his immediate superior, must notify the teacher, in writing, not later than the first day of March." In addition, the Board's policy provides that if a probationary period is established, it "shall not be less than sixty (60) calendar days." Although the plaintiff has not raised it as an issue on appeal, it would appear that not only did the Board fail to comply with I.C. § 33–513(5), it failed to act in accordance with its own procedures, because the letter by which Webster was notified that she was on probation was dated April 6, 1977.

be consistent with the general legislative purpose of benefiting teachers not employed on renewable contracts.

The majority rewrites the initial language regarding probation in I.C. § 33–513(5) as allowing for probation periods which "at minimum" run until the time for the reissuing of contracts and which can continue from one year to the next. Without separately discussing the second provision in the statute, the majority concludes that a probation established under the "reasonable period of probation" provision also does not necessarily terminate upon the reissuance of a contract and can continue from one year to the next. I cannot agree with those conclusions.

It is important to keep in mind that a teacher not employed on a renewable contract has no contract right in being reemployed. With this in mind, if one accepts the fact that under I.C. § 33–513(5) the Board is required to establish a fixed period of probation, it would be clearly illogical to conclude that the probation period could continue from year to year. Under such a reading of the statute the Board could establish a probation period which could possibly continue beyond the time in which the teacher was employed. What if a teacher's contract is not renewed or if she does not accept a new contract if one is offered? Does she take her probationary status with her to the next job? Since a teacher not employed on a renewable contract is only employed for a single year, it would be logical to conclude that the Board can only place such a teacher on probation for the remainder of the school year up until the offering of a new contract if the offering of such is the Board's will.

I believe that the majority is incorrect in concluding that under the initial provision of I.C. § 33–513(5) (applying in cases in which the teacher is placed upon probation pursuant to the required first-semester evaluation), a probation period once established does not terminate upon the reissuance of a contract. The language of the second provision limits the probation period in cases in which probation is imposed after the initial required evaluation has taken place to a reasonable time. To my mind, that provision prevents the Board from establishing a probation period that is either unreasonably short or unreasonably long. However, under the majority's interpretation of the first provision of I.C. § 33–513(5), a probation period established pursuant to that provision only has a *minimum* length of duration; the probation period can continue indefinitely—limited only by the fact that the teacher is entitled to additional rights upon achieving renewable contract status (after three full years of continuous employment with the district, *see* I.C. § 33–1212). This means that under the majority's interpretation of I.C. § 33–513(5) a first-year teacher could be placed on probation during the first month of the school year and that probation could continue for almost three years. Most reasoning persons, including teachers, would likely find such a probation period to be unreasonably long. However, under the majority opinion it would not be improper.

A proper interpretation of I.C. § 33–513(5) if one is necessary, would be as follows: Where a teacher is placed on probation pursuant to the initial provision—based upon the required first-semester evaluation—that probation continues from the date of imposition until the statutory time for issuing new contracts. At that time the offering of a new contract signals the end of probation. Under such an unstrained interpretation, a definite time period would be established, providing the teacher with a reasonable time in which to adjust to the suggestions of the evaluator. The second portion of the statute simply provides that the Board is not precluded from making subsequent evaluations of teachers. If such evaluations result in the imposition of probation, a fixed term of probation that is reasonable in length must be established. Such a probation period, like those established under the initial provision, should continue until the statutory time for issuing new contracts. Such, I submit, is not really an interpretation, but merely a clear and informed reading of the statute, and which is consistent with its purposes. Further-

more, boards of trustees remain at liberty to notify faltering teachers of again being placed on probation pursuant to evaluations occurring in a subsequent contract period.

Finally, I note that the majority concludes that there is substantial and competent evidence to support the trial court's "implicit" finding "that the probation established in the spring of 1977 was still in effect during the 1977–78 school year," a finding based in part on the fact that the plaintiff was aware that her probation was purportedly continuing. In this manner, the majority disposes of the issue, "implicitly" holding that Webster was afforded the due process required under the law. The brief of amicus curiae, however, correctly points out the irrelevance of what Webster thought and of the fact that the principal may have informed her that she was still on probation during the 1977–78 school year. The amicus brief quotes *Robinson, supra,* in which this Court stated: "The statute clearly appears to make imposition of probation a *board* decision." 100 Idaho at 266, 596 P.2d at 439 (emphasis added). There is no contention in this case that the Board of Trustees during the 1977–78 school year acted to establish a probation period for Webster. Thus, Webster claims to be entitled to the relief sought, because either the probation period purportedly established during the 1976–77 school year was not established in accordance with the requirement of the statute, or, because the single probation period had expired. In my opinion she should be accorded such relief in the absence of the Court adoption of the rationale of the district court and the quoted excerpt from the Board's brief—which has been put aside. As previously noted, no termination date was established for the probation period established during the 1976–77 school year. Although neither the appellant nor the amicus curiae argue that the statute requires the establishment of a probation period of fixed duration, a person should be made aware of being placed in a probationary status, and that which is expected of him or her. *See Tuma v. Board of Nursing,* 100 Idaho 74, 593 P.2d 711 (1979).

The contract between Webster and the School District contains the following paragraph:

"5. It is understood and agreed between the parties that this contract is subject to the applicable laws of the State of Idaho, the duly adopted rules of the State Board of Education and the policies of the District which are, by reference, incorporated herein and made a part of this agreement the same as if fully set forth herein."

Our previous decisions establish that the statutory law of Idaho applicable to teacher contracts becomes part of the contract. The excerpt above so recognizes. Similarly, the excerpt provides that the policies of the School District are also incorporated in the teacher contract. Thus, in a recent case the United States District Court for the District of Nevada in reviewing similar statutory provisions, after noting that it was "not assisted by any state court decisions," was "assisted by the treatment and interpretation given the provisions of the School Code by the administrative officers of Washoe County School District." *Cain v. McQueen,* No. R–74–5 BRT (D.Nev.1975), *aff'd* 580 F.2d 1001 (9th Cir.1978).

Here, in the case before us, the School District pursuant to the statutory mandate of I.C. § 33–513(5), did "establish criteria and procedures," and in doing so did two things. (1) The Board went beyond the minimum requirements of I.C. § 33–513(5) but, more importantly, (2) it displayed its understanding of the purpose of I.C. § 33–513(5), which understanding is reflected in its procedures and is hence applicable to the teacher-Board contractual relationship, as per *Cain.*

The School Board's policy required three formal evaluations of a first-year teacher, the first of which was to be completed prior to the second semester, and the other two to be completed prior to March 15th in the second semester. The exact requirements governed a teacher's second year. Following a formal probation, a procedure was spelled out for imposing a probation sta-

tus—such seeming to negate the Court's view that probation once imposed could and would continue on *ad infinitum*. Not an absolute, but it is deducible from a reading of the Board's policy in its entirety that the Board understood the State law as requiring a probationary period as a condition precedent to making a determination that a second or third year contract would not be offered. This, of course, runs contrary to the contentions of counsel as set forth in the Board's brief, but the Board was free to form its own policy prior to any litigation and prior to obtaining the advice of counsel.

Whether it be that I see this in a correct light, or am in error, in any event, I am unable to join the Court's opinion at this juncture.