380 P.2d 222

Jerry WOODMAN and Alpha Woodman, husband and wife, Plaintiffs-Appellants,

v.

Billie N. KNIGHT, Charles Griffin and Andrew F. Genzmer, Defendants-Respondents.

No. 9254.

Supreme Court of Idaho.

March 29, 1963.

454

Church & Church, Burley, for respondent Knight.

Murphy, Schwartz & Cunningham, Twin Falls, for appellants.

TAYLOR, Justice.

At about 10:30 p. m. on May 25, 1960, defendant (respondent) Genzmer was operating a Ford truck and semitrailer, owned by defendant (respondent) Griffin, traveling north on highway 30, and south of the intersection of the highway and Alfresco road, about one-half mile north of Heyburn in Minidoka county. At the same time defendant (respondent) Billie N. Knight was driving a Dodge pickup north on said highway ahead of the Ford truck. The plain-

tiff (appellant) Alpha Woodman, wife of the plaintiff (appellant) Jerry Woodman, was driving plaintiffs' Pontiac automobile east on Alfresco road. As Mrs. Woodman approached the intersection, she stopped in obedience to a stop sign on the west side of the highway, at a point where her car stood a distance of eight or nine feet from the edge of the oiled surface of the highway. Mrs. Woodman testified she looked south to her right to see if the highway was clear, and observed two sets of headlights approaching from the south. It appeared to her that one of the approaching vehicles was attempting to pass the other. She became aware of imminent danger and remarked to Mrs. Patterson, a passenger in the Pontiac, "that we were going to be hit." At that time the car was struck by the Ford truck. Mrs. Patterson, the passenger occupying the right side of the front seat of the Pontiac, testified:

"As she pulled up to the stop sign, I looked to the right and I saw a set of headlights coming towards us. And just then I saw another set of headlights pull out to pass the first headlights. And about that time I turned and looked to the left, and she made the remark 'We are going to be hit', and I started to turn around to see how we could possibly be hit and we were hit."

The truck had been traveling at a speed of 40 miles per hour. The posted speed limit was 60 miles per hour. There was a quadrant approach on the south side of Alfresco road, forming a Y, connecting the road with the highway. The hardtop surface of the highway was 22 feet wide, with shoulders on either side six to eight feet wide, and was marked with a center line.

Genzmer, the driver of the truck, testified that as he approached from the south he observed the pickup ahead of him traveling at a slow rate of speed; "the pickup was traveling slow, barely moving, I would say not over five miles an hour, and he pulled off to the right-hand side of the road, and I proceeded to go on past him. He was far enough off to where I wouldn't have had to got in the other lane. And as I proceeded to pass him, he turned back on the oil in front of me, and then I swerved out to miss him." On cross-examination he testified as to speed:

"Q But you say you were going around 40 and he [Knight] was going not over 15?

"A I would say approximately that, yes."

Genzmer further testified that this occurred about 200 feet south of the intersection; he knew he was approaching an intersection; he did not sound his horn, but he did blink his lights; that Knight drove the pickup off the oiled surface and onto the shoulder just before Genzmer undertook to

pass the pickup; and that Knight gave no signal "whatsoever" of his intention to turn to the left.

The truck traveled across to the left side of the highway, off the oiled surface, traveled north parallel to the highway and collided with the Pontiac.

After the truck had passed, Knight turned off the highway to his left, entered Alfresco road by way of the circular connection, and continued west on Alfresco road. Shortly after the accident he came back to the scene at the request of a third party sent after him by Genzmer. Roy Thomas of the state police, who arrived on the scene about fifteen minutes after the collision, testified, as did Genzmer, that Knight had been drinking.

The cause was tried to the court, sitting without a jury. After the plaintiffs and the defendants Griffin and Genzmer had rested, Knight, who had separately appeared and answered by his own counsel, rested without producing any evidence, except such as his counsel had elicited by cross-examination of witnesses for the other parties. Plaintiffs then presented rebuttal evidence, after which Knight moved the court that the complaint and cross-complaint against him be dismissed on the ground that "there is no evidence of any negligence on the part of Mr. Knight." The cause was then submitted to the court.

Findings of fact, conclusions of law, and judgment were entered in favor of plaintiffs and against defendants Griffin and Genzmer. The court concluded "that none of the acts of the defendant, Billie N. Knight, constitute negligence."

Thereafter, plaintiffs moved the court to amend its findings and conclusions. The effect of the amendments proposed was to find that Knight drove his pickup onto the shoulder at the right side of the highway at a point approximately 200 feet south of the intersection, and turned the pickup to his left back onto the right lane of the highway immediately in front of the Ford truck without giving any signal of his intention so to change his course; that such action was negligent; that Knight's negligence concurred with the negligence of Genzmer in producing the injury sustained by plaintiffs; and that plaintiffs were entitled to have judgment against Knight as well as Griffin and Genzmer. The motion was denied.

Plaintiffs appealed from the judgment and from the order denying their motion.

■ Where the evidence is nonconflicting and undisputed and permits only one conclusion, a finding or conclusion drawn by the trial court contrary thereto is not binding on appeal, and is of no force or effect. Claunch v. Jones, 75 Idaho 271, 270 P.2d 1002; Clark v. Clark, 58 Idaho 37,

69 P.2d 980; Harding v. Home Investment, etc. Co., 49 Idaho 64, 286 P. 920, 297 P. 1101; In re Tarrant's Estate, 38 Cal.2d 42, 237 P.2d 505, 28 A.L.R.2d 419; San Diego Trust & Sav. Bank v. San Diego County, 16 Cal.App.2d 142, 105 P.2d 94, 133 A.L.R. 416; Sylvain v. Page, 84 Mont. 424, 276 P. 16, 63 A.L.R. 528; Hooper v. First Exchange National Bank (C.A. 9th) 53 F.2d 593; 5 Am.Jur.2d, Appeal & Error, § 845. And where such undisputed facts are conclusive of the issue between the parties this court will order judgment entered as required by the facts and the law. Claunch v. Jones, supra; Bussell v. Barry, 61 Idaho 216, 102 P.2d 276; Work Bros. v. Kinney, 7 Idaho 460, 63 P. 596; Commercial Bank v. Lieuallen, 5 Idaho 47, 46 P. 1020; San Diego Trust & Sav. Bank v. San Diego County, Cal., supra.

"The driver of a vehicle intending to turn at an intersection shall do so as follows: * * *

"(b) Left turns on two-way roadways.—At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered." I.C. § 49–721.

"(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 49–721, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

"(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. * * *" I.C. § 49–724.

The manner provided for the giving of required signals is set out in I.C. §§ 49–725 and 49–726. Knight violated three provisions of these statutes: (1) he did not approach the intersection for a left turn "in that portion of the right half of the roadway nearest the center line thereof"; (2) he turned his vehicle to the left upon the highway when such movement

could not be made with reasonable safety; and (3) he gave no signal of his intention to turn when "other traffic" (the Genzmer truck behind him) would be affected by such movement. These acts and omissions on the part of Knight constituted negligence. Hale v. Gunter, 82 Idaho 534, 356 P.2d 223; Howard v. Missman, 81 Idaho 82, 337 P.2d 592; State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272.

■ Idaho Code, § 49-708(b) requires a slow-moving vehicle to be driven "as close as practicable to the right-hand curb or edge of the roadway." And section 49-710(b) requires the driver of an over-taken vehicle to "give way to the right," "on audible signal." Although there was no audible signal given by Genzmer, the act of Knight in moving to the right shoulder of the highway might have been legitimately considered by Genzmer as an invitation to pass.

> "It would seem that this conduct, on the part of the driver of the cattle truck, was tantamount to saying to the driver of any following truck, that he was slowing up to allow the latter to pass,—at least until he reached the line of intersection. It would have been otherwise had he, at any time, given signal of intention to turn either to the right or the left. The very fact of reducing his speed, to two-fifths of his previous speed, in the space of 200 feet, without giving any sign or signal, would indicate to the average driver following him, that the one so reducing his speed was intending to allow the following car to pass. The law required him to see and know, when he started to turn, that a car was following him; and what the law requires him to know, it will assume that he did know." Madron v. McCoy, 63 Idaho 703, 714, 126 P.2d 566, 570.

The negligence of Genzmer, the driver of the truck, in attempting to pass the pickup when within 100 feet of or traversing the intersection (I.C. § 49-713(a), subd. 2) and in failing to sound his horn (I.C. §§ 49-710 (b) and 49-834(a)) was concurrent with the negligence of Knight, above mentioned. The negligence of each was a contributing proximate cause of plaintiffs' injuries. In the absence of the negligence of either, the collision would not have occurred. Although Genzmer and Knight were not acting in concert, and each acted independently of the other, under the circumstances, each became liable jointly and severally for plaintiffs' injuries. Hoffman v. Barker, 79 Idaho 339, 317 P.2d 335; Russell v. City of Idaho Falls and Union Pacific R. Co., 78 Idaho 466, 305 P.2d 740; Clark v. Tarr, 75 Idaho 251, 270 P.2d 1016; Valles v. Union Pacific R. Co., 72 Idaho 231, 238 P.2d 1154; Macomb v. Extension Ditch Co., 70 Idaho 202, 214 P.2d 464; Griffin v. Clark, 55 Idaho 364, 42 P.2d 297; Hartman v. Gas Dome

Oil Co., 50 Idaho 288, 295 P. 998; Brose v. Twin Falls Land & Water Co., 24 Idaho 266, 133 P. 673, 46 L.R.A.,N.S., 1187; McClain v. Lewiston Interstate, Etc., Assn., 17 Idaho 63, 104 P. 1015, 25 L.R.A.,N.S., 691. Cf. Lorang v. Hays, 69 Idaho 440, 209 P.2d 733; Carron v. Guido, 54 Idaho 494, 33 P.2d 345; Bailey v. Idaho Irr. Co., 39 Idaho 354, 227 P. 1055; Woodland v. Portneuf-Marsh Valley Irr. Co., 26 Idaho 789, 146 P. 1106.

"Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against any or all of the responsible persons." 65 C.J.S. Negligence § 110c, page 683.

" * * * where the independent tortious acts of two or more persons supplement one another and concur in contributing to and producing a single indivisible injury, such persons have in legal contemplation been regarded as joint tort-feasors, notwithstanding the absence of concerted action." 52 Am.Jur., Torts, § 112, page 451.

The cause is remanded with instructions to the district court to amend its findings and conclusions as requested by plaintiffs' motion and to modify its judgment by adding thereto the name of Billie N. Knight as a judgment debtor of plaintiffs.

Costs to appellants against Knight.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.