Clara ALEXANDER, Carmen Nelson, Etter Hilton, and Sarah Williams, individually and on behalf of all others similarly situated, Plaintiffs,

and

Henry J. Conner, Plaintiff Intervenor,

v.

Renee HILL, Director, Division of Social Services, North Carolina State Department of Human Resources, Defendant.

No. C–C–74–183–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 6, 1983.

See also, D.C., 549 F.Supp. 1355, 553 F.Supp. 1261.

Legal Services of Southern Piedmont, Inc., Charlotte, N.C., Reita P. Pendry, Lark Hayes and Pal Silberman, Charlotte, N.C., for plaintiffs; Jean M. Cary, Raleigh, N.C., of counsel.

Steven M. Shaber, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., William H. McNair and Marvin A. Bethune, Ruff, Bond, Cobb, Wade & McNair, Charlotte, N.C., and William Woodward Webb, Broughton, Wilkins & Webb, P.A., Raleigh, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

Plaintiffs brought this action under 42 U.S.C. § 1983 to secure compliance by defendants with the federal time limits for processing AFDC and Medicaid applications. This court entered several orders directing defendants to comply with federal law. Thereafter plaintiffs, alleging that defendants still were not processing applications in a timely fashion, moved for further relief.

On November 4, 1982, the court granted further relief consisting in part of an order that defendants pay to each successful AFDC or Medicaid applicant a remedial fine of fifty dollars for each week that his or her application is delayed without "good cause" beyond the federal time limits.

Plaintiffs now seek an award of attorneys' fees. They have not sought fees for obtaining the original order. They seek fees here only for the work required to be done by their attorneys in seeking and obtaining the order from this court requiring defendants to do what they were *already* obligated by previous orders to do.

■ Defendants raise two objections to the fee request. First, they argue that because plaintiffs were represented by staff attorneys of a publicly funded legal services office, they should not be awarded attorneys' fees under 42 U.S.C. § 1988 on the same basis as all other successful civil rights plaintiffs. Second, defendants say plaintiffs' fee request is too high in a number of specific respects.

Defendants' first objection is without merit. The legislative history of the Civil Rights Attorney's Fees Award Act of 1976, Pub.L. No. 94–559, 90 Stat. 2641 (amending 42 U.S.C. § 1988), makes clear that Congress intended for public interest organizations, whether publicly or privately funded, to be awarded attorneys' fees under the Act on the same basis as other practitioners. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5913, *citing with approval Davis v. County of Los Angeles,* 8 EPD ¶ 9444 (C.D.Cal.1974) (fact that plaintiffs' counsel are employed by a public interest organization not legally relevant to calculation of fee award); H.R. No. 1558, 94th Cong., 2d Sess. 8 n. 16 (1976).

Every circuit court in the country that has considered the question has rejected defendants' position and has held that fee awards should in no way be affected by the fact that counsel are legal services or other public interest lawyers. *Copeland v. Marshall,* 641 F.2d 880, 898–900 (D.C.Cir.1980) (en banc); *Palmigiano v. Garrahy,* 616 F.2d 598, 601–02 (1st Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980); *Torres v. Sachs,* 538 F.2d 10, 13 (2d Cir. 1976); *Rodriguez v. Taylor,* 569 F.2d 1231, 1247–48 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Tillman v. Wheaton-Haven Recreation Ass'n., Inc.,* 517 F.2d 1141, 1148 (4th Cir.1975); *Fairley v. Patterson,* 493 F.2d 598, 606–07 (5th Cir.1974); *Hairston v. R & R Apartments,* 510 F.2d 1090, 1092 (7th Cir.1975); *Oldham v. Ehrlich,* 617 F.2d 163, 168–69 (8th Cir.1980).

Finally, defendants' suggestion would undermine the purposes of the Fees Award Act while creating a windfall for defendants in civil rights cases. *Id.; Palmigiano v. Garrahy, supra,* at 602. In amending § 1988, Congress sought to encourage private enforcement of civil rights laws. *See* S.Rep. No. 1011, *supra,* at 5; H.R.Rep. No. 1558, *supra,* at 2. The resources of legal services offices are finite and shrinking; their hands are full enough with the legal problems of the poor without having to devote enormous time and energy to policing state welfare agencies' compliance with federal law. Despite defendants' view that full fee awards are unnecessary to encourage legal services attorneys to bring this

type of action, faithfulness to congressional intent requires courts to provide them the incentive authorized in the statute to protect the rights of welfare recipients.

■ Even if civil rights suits *are* brought, the incentive to defendants to obey the law is reduced if diminished fee awards are assessed when violations are established. *See Copeland v. Marshall, supra,* at 899. Nor should wrongdoers benefit simply because the victims are too poor to hire private lawyers.

The court, therefore, will follow its regular procedure in setting attorneys' fees. In so doing, it is necessary to consider twelve guidelines originally set out in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and adopted by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). ·

The Fourth Circuit, in a later case, *Anderson v. Morris,* 658 F.2d 246 (1981), reviewed the manner in which the *Johnson* guidelines are to be applied by district courts. A base amount for the fee award is to be determined by multiplying the number of hours reasonably expended on the case by the customary hourly rate of compensation (guidelines one and five). This amount is then adjusted up or down by the court on the basis of the other *Johnson* factors.

Following that practice, I make findings as follows:

■ 1. *The time and labor expended.* —The affidavits of plaintiffs' counsel demonstrate, and the court finds, that in connection with the motion for further relief seven individuals performed a total of 391.25 hours of work, broken down as follows:

| | | |
|---|---|---|
| a) Pam Silberman, Staff Attorney | 201.50 | hours |
| b) Lark Hayes, Senior Staff Attorney | 30.00 | |
| c) Jean Cary, Senior Staff Attorney | 42.50 | |
| d) Jane Wettach, Staff Attorney | 28.50 | |
| e) Margaret DeVries, Senior Paralegal | 14.50 | |
| f) Leslie Carter, Law Clerk | 48.25 | |
| g) Margaret Ball, Law Clerk | 26.00 | |
| TOTAL: | 391.25 | hours |

5. *Customary fee for like work.*—Plaintiffs request fees of $75.00 per hour for the Senior Staff Attorneys, $60.00 per hour for the Staff Attorneys, $50.00 per hour for the Senior Paralegal, and $35.00 per hour for the Law Clerks. These fees are within the range of charges customarily made in this area for similar work, except that $35.00 per hour is somewhat high for Law Clerk work and should be reduced to $25.00.

Two additional observations should be made at this stage. First, the work of Margaret DeVries should not be equated with that of other paralegals in the area. She has worked for six years representing and advising clients in the public benefits area. The court finds that the requested $50.00 per hour is a reasonable fee for her services.

Second, defendants complain that 114 of the hours of attorney time were spent by attorneys reviewing case files and preparing affidavits setting forth their findings. Defendants argue that these tasks could have been performed by paralegals and law clerks and therefore should not be billed at "top dollar" values. While it is true that some courts have adjusted the hourly rate used in computing fee awards according to the type of service performed, *see e.g., Anderson v. Morris, supra,* at 249, they have made broad rather than fine distinctions, such as between partner and associate work, trial and appellate work, or court and out-of-court work.

There is no litmus paper test by which one can divide the labor of a trial lawyer between "legal" and "other" types of services. Most of a trial lawyer's work is the marshaling and presentation of facts rather than research into erudite principles of law. A good trial lawyer goes where the facts are; sees the witnesses; writes down what they say if need be; looks at the books and papers and draws conclusions from them; and manages the organization, the arrangement, the pruning and the presentation of those facts so that the facts rather than "legal" argument tell the story.

The argument with regard to the review and analysis of the case files and preparing affidavits might be used just as well to

support an increase in the charges for the time of paralegals and law clerks as to support a reduction in the charges for the time of senior lawyers. Nevertheless, defendants' concern will be recognized, but only to a limited degree, under *Johnson* factor # 3, "The skill required."

The court thus determines that the base fee, before adjustment, should be determined as follows:

| | | |
|---|---|---|
| a) Pam Silberman | 201.50 hours x $60 = | $12,090.00 |
| b) Lark Hayes | 30.00 hours x $75 = | 2,250.00 |
| c) Jean Cary | 42.50 hours x $75 = | 3,187.50 |
| d) Jane Wettach | 28.50 hours x $60 = | 1,710.00 |
| e) Margaret DeVries | 14.50 hours x $50 = | 725.00 |
| f) Leslie Carter | 48.25 hours x $25 = | 1,206.25 |
| g) Margaret Ball | 26.00 hours x $25 = | 650.00 |
| | TOTAL: | $21,818.75 |

In accord with *Anderson v. Morris, supra,* this total is to be adjusted as called for by the remaining *Johnson* guidelines.

2. *The novelty and difficulty of the questions raised.*—The matters in dispute have involved primarily factual investigation, organization, and presentation of information. No particularly unusual or difficult issue was raised or briefed. This factor does not justify an adjustment in the award.

3. *The skill required.*—A normal degree of skill and knowledge of law and fact was required to present plaintiffs' motion. A portion of the attorney time spent in connection with the motion was devoted to the same kind of investigative work done by the law clerks who worked on the case. This factor justifies some downward adjustment in the award.

4. *The preclusion of other employment by the attorneys because they handled this case.*—This factor does not call for any adjustment.

6. *Whether the fee is fixed or contingent.*—This factor does not require any adjustment in this case.

7. *Time limitations imposed by the client or the circumstances.*—This factor does not call for any adjustment.

8. *The amount involved and the results obtained.*—Plaintiffs' counsel established that defendants were continuing to violate the law and this court's orders and obtained for their clients significant statewide injunctive and monetary relief. This factor supports a substantial upward adjustment in the fee award.

9. *Experience, reputation and ability of the attorneys.*—Plaintiffs' attorneys are experienced in the public benefits area. Their reputation is excellent and commensurate with their ability. This factor supports an upward adjustment of fees.

10. *The undesirability of the case.*—Few lawyers are willing to devote large amounts of time and energy to protecting the rights of people who can't pay legal fees. This sort of case is often frustrating and thankless and requires great dedication, particularly where defendants' violation of the law continues for the better part of a decade. This factor indicates the fees should be adjusted upward.

11. *The nature and length of the professional relationship with the client.*—This factor has no effect on the award.

12. *Awards in similar cases.*—The award made here is well within the range of fees previously awarded in similar cases.

The combined effect of factors 8, 9 and 10 justifies an upward adjustment of $10,000.00 in attorneys' fees. After reducing this upward adjustment by $2,000.00 on the basis of factor 3, the court finds reasonable attorneys' fees in this case to be $29,818.75.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that defendants pay to counsel for plaintiffs as attorneys' fees the sum of $29,818.75.