706 P.2d 21

Stephen SHIELDS, individually, and as the natural father and guardian ad litem of Christopher Shields, Plaintiff-Appellant Cross-Respondent,

v.

James MARTIN, Defendant-Respondent, Cross-Appellant

and

Lauri Ann Halsey, an individual, Defendant-Respondent,

and

the City of Boise, a municipal corporation; and John Doe, a detective, Defendants.

No. 15125.

Supreme Court of Idaho.

April 10, 1985.

Costs Awarded and Rehearing Denied Sept. 30, 1985.

Lojek & Penland, Richard C. Boardman (argued), Boise, for plaintiff-appellant, cross-respondent.

Quane, Smith, Howard & Hull, Allyn L. Sweeney (argued), Boise, for defendants-respondents cross-appellants.

BISTLINE, Justice.

The marriage of Stephen Shields, a plaintiff herein, and Laurie Halsey terminated in a divorce decree which awarded Halsey custody of one-year-old Christopher, a second plaintiff herein. A few years later the court placed custody in Shields, and the incident which gave rise to this lawsuit arose while Shields had custody of Christopher.

Shields and Christopher were living in Boise where Christopher attended a daycare center when Shields was at his work. The incident is simply stated. Halsey came to Boise where she enlisted the aid of Boise Police Officer Martin. The two of them, co-defendants herein, went to the daycare center where, making use of a copy of the superseded, four-year-old custody decree which had placed custody of Christopher in

Halsey, they obtained Christopher and took him from the daycare center. Immediately after the abduction, Halsey absconded, taking Christopher with her.

There was evidence introduced at trial, which the jury was at liberty to believe, and did believe, that Martin advised the daycare center operator that the document was valid and binding and that Christopher should be relinquished. Martin also told the daycare operator that she could not call Shields before the delivery of the child to Halsey.

Later, when notified that Christopher had been abducted, Shields contacted Martin, told him the true facts as to custody, and requested help in finding Christopher. Martin flatly refused and would not furnish any information. Shields eventually found and recovered Christopher and subsequently initiated this action to recover damages for himself and for Christopher.

The complaint of Shields and Christopher alleged the joint and several liability of Martin and Halsey for the wrongful abduction of Christopher and sought recovery of damages allegedly incurred by both plaintiffs. Halsey, after filing an answer, did not appear at trial either in person or by counsel. Martin appeared at trial and was represented by counsel.

At the instructions conference, over plaintiffs' objection, the district court refused to give plaintiffs' requested jury instruction No. 3 instructing the jury on joint and several liability:

YOU ARE INSTRUCTED THAT where two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another. Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages. All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.

The court refused the instruction in favor of two special verdict forms, which treated the tortious conduct of the two defendants as being two separate and distinct tortious causes of actions:

## Special Verdict Form No. 1

We, the jury, answer the questions submitted to us in Special Verdict Form No. 1 as follows:

QUESTION NO. 1: Did Defendant James Martin violate Plaintiff Stephen Shields' Federal Constitutional rights?

ANSWER: YES _10_ NO _2_

If you answered the above question "Yes," then please answer Question No. 2. If you answered the above question "No," then omit Questions 2, 3 and 4, and proceed to Question 5.

QUESTION NO. 2: Was Defendant James Martin's conduct the proximate cause of the damages, if any, alleged by Stephen Shields?

ANSWER: YES _12_ NO _0_

If you answered the above question "Yes," then please answer Question No. 3. If you answered the above question "No," then omit Questions 3 and 4, and proceed to Question 5.

QUESTION NO. 3: Were Defendant James Martin's actions performed in good faith?

ANSWER: YES _2_ NO _10_

If you answered the above question "No," then please answer Question No. 4. If you answered the above question "Yes," then omit Question 4, and proceed to Question 5.

QUESTION NO. 4: What is the total amount of damages sustained by Plaintiff Stephen Shields as a result of Officer Martin's violation of Plaintiff's Constitutional rights?

ANSWER: $ 1,658.50

QUESTION NO. 5: Did Defendant James Martin violate Plaintiff Christopher Shields' Federal Constitutional rights?

ANSWER: YES _10_ NO _2_

If you answered the above question "Yes," then please answer Question No. 6. If you answered the above question "No," then omit Questions 6, 7 and 8, and simply sign the Verdict Form and proceed to Special Verdict Form No. 2.

QUESTION NO. 6: Was Defendant James Martin's conduct the proximate cause of the damages, if any, alleged by Christopher Shields?

ANSWER: YES _10_ NO _2_

If you answered the above question "Yes," then please answer Question No. 7. If you answered the above question "No," then omit Questions 7 and 8, and simply sign the Verdict Form and proceed to Special Verdict Form No. 2.

QUESTION NO. 7: Were Defendant James Martin's actions performed in good faith?

ANSWER: YES _2_ NO _10_

If you answered the above question "No," then please answer Question No. 8. If you answered the above question "Yes," then omit Question 8, and simply sign the Verdict Form and proceed to Special Verdict Form No. 2.

QUESTION NO. 8. What is the total amount of damages sustained by Plaintiff Christopher Shields as a result of Officer Martin's violation of Plaintiff's Constitutional rights?

ANSWER: $ 10.00

## Special Verdict Form No. 2

We, the jury, answer the questions submitted to us in Special Verdict Form No. 2 as follows:

QUESTION NO. 1: Was Christopher Shields falsely imprisoned by defendant Lauri Halsey?

ANSWER · YES _12_ NO _0_

QUESTION NO. 2: What is the total amount of damages sustained by Plaintiff Christopher Shields?

ANSWER: $ 3,000

QUESTION NO. 3: Is Defendant Lauri Halsey liable for the intentional infliction of emotional distress?

ANSWER YES _12_ NO _0_

If you answered "No" to Question No. 3, please omit Question No. 4 and simply sign the Verdict Form. If you answered Yes to Question No. 3, please answer Question No 4, and then sign the Verdict Form.

QUESTION NO. 4: What is the total amount of damages sustained by plaintiff?

ANSWER: $ 5,000

QUESTION NO. 5: Do you find that plaintiffs are entitled to punitive damages from the defendant Lauri Halsey?

ANSWER: YES _12_ NO _0_

If you answered Yes, what amount should be awarded?

$ 5,000

The form dealing with Martin's conduct was submitted to the court by counsel for Martin. The second form appears to have been prepared by the court, and was patterned after the other. After judgment was entered on the special verdicts, the district court denied plaintiffs' motion to amend the judgment and make Martin and Halsey jointly and severally liable for all damages suffered by each plaintiff. In denying the motion, the court stated:

> The Motion to Correct the Judgment in this case is denied. The defendants are not jointly and severally liable. Each defendant was found liable under different theories. Different duties were owed by each and breached by each. Further, Officer Martin could not have been found liable of the torts committed by Laurie Ann Halsey. He was found liable under 42 U.S.C. 1983. Mrs. Halsey could not have violated 42 U.S.C. 1983. They each committed different acts which harmed the plaintiff—acts which were different in character and degree. The jury fixed an award for the amount of harm caused by each. There is no basis for joint and several liability.

R., Vol. 5, p. 126.

Plaintiffs' appeal is directed at the denial of the motion to amend the judgment. Martin's cross-appeal challenges both the jury's finding that he is liable under 42 U.S.C. § 1983, and the award and amount of attorney's fees granted to the plaintiffs pursuant to 42 U.S.C. § 1988. Martin further argues that mere negligence is insufficient for imposition of liability under § 1983, on which basis he contends that the damage awards against him are improper as a matter of law since, at most, his conduct constituted negligence. We will take up each issue in turn.

## I.

We agree with plaintiffs' argument that Martin and Halsey were not separate and independent tortfeasors, but were joint tortfeasors whose combined acts, which were committed in concert, caused the plaintiffs' harm. In determining whether two or more defendants are jointly and severally liable, ordinarily the first and only inquiry is whether the defendants acted in combination and in a concerted manner in causing the harm of which the plaintiff is complaining. Under some circumstances, however, a second inquiry is made to ascertain if the harm caused is indivisible, notwithstanding that the defendants acted separately and not in concert. In *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 600, 603 P.2d 156, 166 (1979), we stated:

> [E]ach tortfeasor whose negligence is a proximate cause of an *indivisible* injury should remain individually liable for *all* compensable damages attributable to that injury. Such is the underlying basis for the rule of joint and several liability.

> The Court has long held that when tortious acts of several parties *concurrently cause an injury*, each tortfeasor is liable for the whole of the damage. *Pollard v. Land West, Inc.*, 96 Idaho 274, 526 P.2d 1110 (1974); *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967); *Russell v. City of Idaho Falls*, 78 Idaho 466, 305 P.2d 740 (1956); *Lorang v. Hays*, 69 Idaho 440, 209 P.2d 733 (1949). *See also* 2 Restatement (Second) of Torts §§ 434(2), 439 (1965); W. Prosser, Law of Torts §§ 46, 47 (4th ed. 1971); F. Harper & F. James, The Law of Torts, § 10.1 (1956).

(Emphasis added.)

*Hackworth v. Davis*, 87 Idaho 98, 390 P.2d 422 (1964), and *Woodman v. Knight*, 85 Idaho 453, 380 P.2d 222 (1963), are sound authority from this Court for the same principle. In *Woodman*, the Court quoted from the texts:

> "Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against any or all of the responsible persons." 65 C.J.S. Negligence § 110c, page 683.

> " * * * where the independent tortious acts of two or more persons supplement one another and concur in contributing to

and producing a single indivisible injury, such persons have in legal contemplation been regarded as joint tort-feasors, notwithstanding the absence of concerted action." 52 Am.Jur., Torts, § 112, page 451.

*Woodman, supra,* at 459, 380 P.2d at 226. In *Hackworth,* the Court relied upon Professor Cooley, Prosser, and *American Jurisprudence:*

"Moreover, there are recognized classes of cases in which several persons may be held jointly and severally liable, although they are several and not joint tort-feasors, where, notwithstanding lack of any concert of action or unity of purpose, their acts are concurrent as to place and time and unite in setting in operation a single destructive and dangerous force which produces the injury. One such class of cases, recognized by most authorities, embraces those cases in which one is injured by the combined concurrent or successive negligence of different persons acting independently. According to the great weight of authority, where the concurrent or successive negligent acts or omissions or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tort-feasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly."

*Hackworth, supra,* 87 Idaho at 104–05, 390 P.2d at 425 (quoting from 38 Am.Jur.Negligence, § 257, p. 946).

"The weight of authority will, we think, support the more general proposition, that where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action."

*Hackworth, supra,* at 105, 390 P.2d at 425 (quoting from 1 Cooley, Torts, § 86, p. 277 (4th ed. 1932).

" * * * Where two or more causes combine to produce such a single result, incapable of any logical division, each may be a substantial factor in bringing about the loss, and if so, each may be charged with all of it. Here again the typical case is that of two vehicles which collide and injure a third person. The duties which are owed to the plaintiff by the defendants are separate, and may not be identical in character or scope, but entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made."

*Hackworth, supra,* at 105, 390 P.2d at 425 (quoting from Prosser, Law of Torts, § 45, p. 226 (2d ed. 1955).

In applying the principles set out above, on first looking at the facts and circumstances of the tortious *conduct* of the actors, it is clear that Martin and Halsey were joint tortfeasors. It was the combined, tortious acts of both that inflicted harm on the plaintiffs. It was Martin and Halsey, or Halsey and Martin, who together and at one time managed the abduction of Christopher from the daycare center. So viewed their conduct is exactly that described in *Woodman* (quoting Corpus Juris Secundum), "Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened ...," *Woodman, supra,* 85 Idaho at 459, 380 P.2d at 226; and as described in *Hackworth* (quoting Cooley), two or more persons concurring in producing a single indivisible injury.

On then looking at the *harm done,* again it is clear that Martin and Halsey were tortfeasors whose liability to both plaintiffs was joint and several. As stated in *Hack-*

**138**

*worth* (quoting Prosser), "entire liability rests upon the obvious fact that each has contributed to the single result, and that no rational division can be made." *Hackworth, supra,* 87 Idaho at 105, 390 P.2d at 425.

The district court's rationale, set out above from the order denying plaintiffs' motion to correct the judgment was in error, as was the failure to instruct the jury on joint and several liability. The district court, in observing that "the jury fixed an award for the amount of harm caused by each," failed to realize that the jury did so responsive to the questions propounded in the two special verdicts. The underlying injury here perpetrated was the wrongful abduction of Christopher from the daycare center. That abduction enabled Halsey to take him and flee the state—a wholly foreseeable consequence of the abduction. All of the damages suffered by the plaintiffs were proximately caused by both of the tortfeasors—both of whom participated in the wrongful abduction of Christopher. How the jury managed to apportion damages in those circumstances is not readily comprehended, but we need not be further concerned in that respect. The jury should not have been put to the task, but rather should have been instructed on joint and several liability. Where the jury was not so instructed, the error could have been corrected by amending the judgment as requested, and the failure to do so was error.

The district court, perceiving that plaintiffs pursued a claim of liability against Martin based on 42 U.S.C.1983, and against Halsey based on state tort law, erred in stating that because the *theories* differed on which each defendant was held liable, such precluded their being jointly and severally liable. The tortious conduct giving rise to liability was the wrongful abduction

of Christopher. Theories of liability do not affect that conclusion.[1] What is relevant is that Martin and Halsey, acting concurrently and in a concerted manner, committed acts found to be torts—acts which produced an indivisible harm to both plaintiffs.

For the above reasons, we reverse the judgment of the district court. On remand the judgment will be amended to provide that the defendants are jointly and severally liable for the damages· suffered by Shields and Christopher so that the total amount of *compensatory* damages incurred by Shields—$6,650.50—and the total amount incurred by Christopher—$3,010—are the joint and several liability of Halsey and Martin.

■ The punitive damages awarded to both Shields and Christopher against only Halsey for $5,000 are not subject to joint and several liability. The reason for this lies in the nature of such damages. Punitive damages are not awarded for purposes of compensating the plaintiff, but to punish the defendant and deter others from following defendant's example. *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.,* 95 Idaho 501, 504, 511 P.2d 783, 786 (1973). Thus, joint and several liability has no applicability in instances involving damages that are not compensatory.[2]

**II.**

■ Martin argues that he acted in good faith in doing what he did and is, therefore, immune from liability under 42 U.S.C. § 1983. We do not agree.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court announced the correct test for determining if a state official acted in good faith, thereby immun-

1. The fact that Martin's tort is labeled a "constitutional tort" is irrelevant in determining whether there was joint and several liability. A violation of 42 U.S.C. § 1983 "creates a species of tort liability...." *Owen v. City of Independence,* 445 U.S. 622, 635, 100 S.Ct. 1398, 1407, 63

L.Ed.2d 673 (1980), in which the general rules of joint and several liability should apply.

2. The plaintiffs did not allege any error in the giving of a special verdict form which did not provide for assessment of punitive damages against Martin.

izing him or her from liability in a § 1983 action:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
>
> . . . .
>
> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

*Id.* 102 S.Ct. at 2738–39.

Martin argues that because he believed that he had authority not only to act as a "civil standby," but also to enforce the court order, a copy of which Halsey gave him, he was necessarily acting in good faith. We disagree.

At trial, in rebutting Martin's testimony in support of his contention, plaintiff's counsel read into the record the following question asked of Captain Gerald Huffaker of the Boise Police Department during discovery proceedings:

> Q. "Did the Boise City Police Department, on or about March 11th, 1980, have a standard procedure, policy or custom for dealing with cases where a parent required police aid in obtaining custody of a child located in Idaho? If so, please set forth that standard procedure and identify all documents which express such policy, procedure or custom."

R., Vol. 2, p. 13.

Huffaker read in open court the following answer which he had earlier given:

> A. Okay. "The Boise Police Department did not in March, 1980, have a policy whereby an officer was to aid any party in securing custody of a minor child. In March, 1980, it was the Department's practice to render a civil assist when requested by someone seeking custody of a child. A civil assist is one in which an officer merely monitors a scene in order to insure that the peace is kept.

> Where a civil assist is rendered, the officer's *sole* function is to stand by in the event violence or similar trouble ensues. It is *not* the officer's function to aid a parent or other party in actually obtaining physical custody of a child. *An officer of the Boise Police Department is not a constitutional officer such as a sheriff; accordingly, a Boise Police Department officer cannot enforce a civil custody order* and directly take physical possession of a minor and then turn that minor over to another. Only where the peace is threatened may the officer take any action."

R., Vol. 2, pp. 13–14. (Emphasis added)

Based upon that testimony, the jury was entitled to discredit Martin's contention that he had acted in good faith.

The subsequent conduct of Martin upon being informed by Shields of the true circumstances of custody also constituted a sound basis for the jury's finding that Martin had not acted in good faith. Furthermore, Martin has not supplied us with any authority for the proposition that a city police officer is cloaked with any authority to predicate such affirmative action as here taken by Martin.

### III.

■ Martin next argues that the district court erred in allowing the action to proceed against him on a theory of negligence, and that the liability imposed upon him must be reversed since negligence is an insufficient basis upon which to base a § 1983 claim.

Martin relies upon *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), to support his argument. Our review of *Parratt* leads us to the opposite conclusion. In that case, a prison inmate claimed a deprivation of property without due process in violation of the fourteenth amendment and 42 U.S.C. § 1983 as a result of the negligent loss by prison officials of a mail-ordered hobby kit. The Supreme Court denied the inmate's claim. Holding that due process was not

denied since state tort remedies were available to remedy the loss, the High Court stated:

Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights. In *Baker v. McCollan* [443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)] *we suggested that simply because a wrong was negligently as opposed to intentionally committed did not foreclose the possibility that such action could be brought under § 1983.* Id. at 534, 101 S.Ct. at 1912 (emphasis added).

The Court went on to add:

Both *Baker v. McCollan* [*supra*] and *Monroe v. Pape* [365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961)] *suggest that § 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind.* Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprive a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.* at 535, 101 S.Ct. 1913 (emphasis added).

In response to these statements, Justice Powell disagreed. Believing that the Court decided this issue without fully addressing it, he concurred only in the result and wrote: "I do not believe that ... negligent acts by state officials constitute a deprivation of property within the meaning of the Fourteenth Amendment, regardless of whatever subsequent procedure a state may or may not provide." *Id.* at 546, 101 S.Ct. 1918 (Powell, J., concurring).

Justice Marshall concurring in part and dissenting in part, made clear that he did concur in that part of the opinion which held that negligent conduct by persons acting under color of state law may be actionable under § 1983. *Id.* at 555, 101 S.Ct. at 1923. As the majority opinion and Justice Marshall point out, the crux of whether a negligent cause of action under § 1983 may be made out is whether the alleged constitutional deprivation is redressable through resort to an adequate state tort remedy procedure. *Id.* at 543–44, 101 S.Ct. at 1917; 555–56, 101 S.Ct. at 1923. Thus, if an adequate state tort remedy is available, no § 1983 cause of action is maintainable; however, if an adequate remedy is not available, such an action is maintainable.

Our analysis of *Parratt* is in accord with the conclusions reached by two Ninth Circuit Court of Appeals panels, *Haygood v. Younger*, 718 F.2d 1472, 1478 (9th Cir.1983) ("[N]egligence alone can support a section 1983 cause of action."); *Hirst v. Gertzen*, 676 F.2d 1252, 1263 (9th Cir.1982) ("In *Parratt*, [*supra*] the Supreme Court held that negligent conduct by persons acting under color of state law may be actionable under 42 U.S.C.1983. There is no express requirement of a particular state of mind in Section 1983."), and two First Circuit Court of Appeals panels, *Fernandez v. Chardon*, 681 F.2d 42, 55 (1st Cir.1982), *cert. denied in part*, 459 U.S. 987, 103 S.Ct. 343, 74 L.Ed.2d 382 (1982), *aff'd on other grounds sub nom. Chardon v. Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983) ("Liability may be grounded on negligence alone.").

In this case, no adequate state tort remedy exists. Both parties concede, and the district court below held, that under current Idaho law Martin is immune from any state tort remedy under the Idaho Tort Claims Act in light of the interpretation given to that Act by this Court in *Chandler v. City of Boise*, 104 Idaho 480, 660 P.2d 1323 (1983). Thus, we hold that a negligent cause of action is maintainable in this case under 42 U.S.C. § 1983.

We also note that the jury could have easily found that Martin's conduct extended beyond mere negligence. It was not negligence but willfulness on Martin's part to use his capacity as a police officer to tell

the daycare operator to turn Christopher over to Halsey and not to call Shields. Likewise his subsequent refusal to aid Shields upon being informed of Shields' legal custody of Christopher is evidence of more than mere negligence. Finally, nothing in the special verdict form relating to Martin, which was submitted by Martin, asked the jury to determine whether Martin's acts were negligent, willful, or a combination of the two. It simply asked the jury to answer (1) whether Martin violated plaintiffs' constitutional rights, and (2) whether Martin's acts were done in good faith. Given Instruction Nos. 14 and 15, in essence, simply supplemented the provisions of Martin's submitted special verdict form. They were but recitals of the holding in *Parratt* and read as follows:

### JURY INSTRUCTION NO. 14

You are instructed that it is not necessary to find that the defendant had any specific intent to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs. The plaintiffs are entitled to relief if the defendant intended the actions which resulted in a violation of the plaintiffs' civil rights and caused them damages, unless you find that the Defendant Martin acted in good faith as defined in these instructions.

### INSTRUCTION NO. 15

The deprivation of plaintiffs' constitutional rights need not be willful or intentional; a negligent act, whether of omission or commission, is sufficient to cause an unlawful deprivation of constitutional rights.

When I use the word "negligence" in these instructions, I mean the failure to use ordinary care in the management of one's property or person. The words "ordinary care" mean the care a reasonably prudent person would use under circumstances similar to those shown by the evidence. Negligence may thus consist of the failure to do something which a reasonably careful person would not

do, under circumstances similar to those shown by the evidence.

R., Vol. 5, pp. 83–84.

We accordingly reject Martin's claim on this issue.

### IV.

Martin next contends that the district court's awarding of $13,555.15 attorney's fees to plaintiffs was improper. We disagree.

■■■■ The award to plaintiffs was based on 42 U.S.C. § 1988. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the High Court stated that the purpose of § 1988 is to "ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id.* 103 S.Ct. at 1937, quoting H.R.Rep. No. 94–1558, p. 1 (1976). To effectuate that purpose, § 1988 authorizes courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. This award should ordinarily be given to the prevailing party unless special circumstances exist that would make such an award unfair. *Id.* at 1937. The Court in *Hensley* defined a "prevailing party" as one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 1939. Quite clearly, the plaintiffs in this case prevailed at trial.

With respect to the amount of the award, the district court is vested with discretion. *Id.* at 1941. On appeal, the standard of review is whether the district court abused its discretion in making its award. The district court applied the test put forth in *Hensley* with its list of twelve different factors, and found the award to be reasonable. The district court pointed out:

The plaintiff prevailed entirely on his claim in the amount of $1,658.50. The fee request is high in relation to the monetary amount actually obtained against Officer Martin, however, it is reasonable in light of the effort necessary to prevail at all in a case of this type in this area.

R., Vol. 5, p. 124.

This conclusion has also been reached by many federal courts in dealing with this issue. *See, e.g., Williams v. Thomas,* 692 F.2d 1032 (5th Cir.1982); *Roberts v. Nat'l Bank of Detroit,* 556 F.Supp. 724 (E.D. Mich.1983); *Alexander v. Hill,* 553 F.Supp. 1263 (W.D.N.C.1983); *Brule v. Southworth,* 552 F.Supp. 1157 (D.R.I.1982); *Dickerson v. Pritchard,* 551 F.Supp. 306 (W.D.Ark.1982). We are not persuaded of any error on this issue. We also note that had the court properly entered a joint and several judgment against both defendants, that judgment, as against Martin, would have been considerably less disproportionate to the amount of attorney's fees awarded.

In summary, on Martin's cross-appeal, we affirm the district court; on the plaintiffs' appeal we reverse the order denying plaintiffs' motion to amend the judgment and on remand direct that the judgment be modified in accordance with the views herein expressed. Costs on appeal to plaintiffs.

HUNTLEY, J., concurs.

DONALDSON, C.J., concurs in parts II and III and dissents in parts I and IV.

SHEPARD, J., concurs in the result.

BAKES, Justice, concurring in part and dissenting in part:

I concur in that portion of the majority opinion which affirms the trial court on the cross appeal filed by defendant Martin, which alleged that the liability imposed upon him by the jury verdict must be reversed since negligence is an insufficient basis upon which to base a 42 U.S.C.A.1983 claim against him. However, I dissent from the majority's finding of joint and several liability against the defendant Martin as a result of the liability imposed upon the defendant Halsey by the jury.

I

The defendant cross appellant Martin, a Boise police officer, asserts on appeal that under the decision of the United States Supreme Court in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), he could not be held liable for negligent deprivation of the plaintiff's constitutional rights, and that it was improper to so instruct the jury. As the majority opinion correctly points out, "[T]he crux of whether a negligent cause of action under 1983 may be made out is whether the alleged constitutional deprivation is redressable through resort to an adequate state tort remedy procedure." *Ante* at 29. The majority then affirms the trial court's submission to the jury of a negligent deprivation of constitutional rights cause of action under Section 1983 in this case because the majority agrees with the trial court that "[i]n this case, no adequate state tort remedy exists." *Ante* at 29. The majority arrives at that conclusion because it also agrees with the district court's analysis that "Martin is immune from any state tort liability under the Idaho Tort Claims Act in light of the interpretation given to that act by this Court in *Chandler v. City of Boise,* 104 Idaho 480, 660 P.2d 770 (1983)." *Ante* at 30. Agreeing that Martin is immune from any state tort remedy under the Idaho Tort Claims Act, the majority then concludes, "Thus, we hold that a negligent cause of action is maintainable in this case under 14 U.S.C. 1983." *Ante* at 29.

I concur with the majority's analysis of Martin's immunity under the Idaho Tort Claims Act, based upon *Chandler v. City of Boise, supra,* which the majority reaffirms today, and therefore concur in that portion of the majority opinion dismissing defendant Martin's cross appeal.

II

However, what the majority then does, in applying the doctrine of joint and several liability and imposing liability on Martin because of the conduct and judgment rendered against the defendant Halsey, is incomprehensible. It is totally inconsistent to say on the one hand that, in order to uphold the negligent deprivation of constitutional rights cause of action under Section 1983 against Martin, the plaintiff must have no state tort law remedy against Martin and then in the next breath state that

the defendant Martin is liable to the plaintiff Shields because the judgment rendered against the defendant Halsey is or should be joint and several.

There are even more inconsistencies in the majority opinion, but before those inconsistencies are discussed, the record must be set straight regarding the facts of this particular case. The majority has presented only the appellant's side of the record in order to justify its ruling. However, the fundamental rule in appellate practice, long followed by this and every other appellate Court, is that the case on appeal must be viewed most favorably to the respondent which, on the issue of joint and several liability, is the defendant Martin in this case. *E.g., Fajen v. Powlus*, 96 Idaho 625, 533 P.2d 746 (1975); *May v. Triangle Oil Co., Inc.*, 96 Idaho 289, 527 P.2d 781 (1974). (An exception is cases involving appeals from summary judgment, in which the record should be viewed most favorably to the person opposing the summary judgment since there has been no resolution of facts.)

Viewing the record most favorably to the respondent, as our prior cases say we must do on appeal, *Fajen v. Powlus, supra*, the facts reveal a different story than what the majority tells. On March 11, 1980, the day the child was taken by the mother from the day care center, the father merely had a "temporary custody" order dated August 9, 1978, which stated that the father should have temporary custody only "until the hearing scheduled ... for August 23, 1978...." The hearing never took place, and the mother had not yet taken action to regain physical custody pursuant to the previous court order awarding her permanent legal custody of the child. Therefore, when Officer Martin was dispatched in Boise to render a "civil standby," *i.e.*, ensure that there was no violence in returning physical custody, both parents had arguable and reasonable legal bases claiming entitlement to custody of the child.

The mother's position was that the father's temporary custody order had, by its terms, expired nineteen months earlier, and she had the only legitimate permanent custody order. Even if Officer Martin had seen the subsequent temporary order there is no way he could have concluded that the mother had no right to take the child. This is not to say that Officer Martin could not have proceeded more cautiously. However, he is not as culpable as the majority represents. In fact, the father had earlier gained the temporary physical custody in a manner not unlike the means used by the mother. In July, 1978, the father drove from Boise to the mother's Oregon residence where he admittedly "lied" to the mother that he would return the child in two weeks according to his visitation rights. Instead the father took the child home (out of state) and immediately took *ex parte* legal action to keep the child. Subsequently, the father moved three times, once out of Idaho, and the record does not show whether the custody court or the mother were advised of the moves. Having been deprived of her child through such means, it is not surprising (although not condoned) that the mother resorted to similar means. The majority states that the mother "absconded" to another state with the child when, in fact, she merely returned home to her husband and residence in Oregon where she took legal action to keep the child. Only subsequent to all this was the father awarded definite permanent legal custody. The mother may not have been providing the best care for the child, but the record indicates that the father had his problems also. The case presents the sorry state of affairs resulting from divorce in our society, and I do not condone the actions of either parent. However, it is easy to see how a well-meaning police officer could be dragged into the fray and charged with improper conduct while attempting to ensure against violence.[1]

1. Officer Martin did ask the child care person not to call the father. While this was improper, his fear was that the presence of the father would greatly increase the possibility of violence.

On the factual record presented above, the jury made factual determinations that the defendants: were liable under different laws; breached different duties; caused divisible injuries; and the court ruled that they were not jointly and severally liable. In fact, the plaintiffs approved the separate verdict forms and should not be heard to assign error on that basis. *See Young v. Group Health Co-op of Puget Sound*, 85 Wash.2d 332, 534 P.2d 1349 (1975); *Cf. McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983) (party may not assign error to an instruction requested and given). The jury further determined that Officer Martin had "caused" not much more than nominal damages. Those findings of fact by the court and jury were not "clearly erroneous" and should not be set aside on appeal. I.R.C.P. 52(a); *Glen v. Gotzinger*, 106 Idaho 109, 675 P.2d 824 (1984); *Webster v. School Dist. No. 25*, 104 Idaho 342, 659 P.2d 96 (1983). The majority violates the "clearly erroneous" rule by substituting its own findings of fact that Officer Martin allegedly acted in concert with the mother to cause indivisible injuries.

If the majority is alleging that the joint and several liability instruction should have been given, then the case should be remanded for a new trial. Again, the majority opinion is inconsistent in its treatment of this issue. The majority first states that "the jury ... should have been instructed on joint and several liability," based upon plaintiff's requested jury instruction number 3, which the majority states the district court erroneously failed to give. The district court had refused to give that instruction because the defendant Martin was immune under the Idaho Tort Claims Act from liability for the state tort actions as analyzed in Part I above. The majority holds that "the district court's rationale, ... was in error, as was the failure to instruct the jury on joint and several liability." If, as the majority states, it was error for the district court not to instruct the jury on the question of joint and several liability, then that issue must be a question of fact and the majority should be remanding this mat-

ter for a trial on that issue. It is entirely possible that the jury would have found that Officer Martin did not "unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charged them with intending the consequences which follow," as set out in the instruction approved by the majority. Nevertheless, after concluding that the jury should have been instructed on the issue of joint and several liability, the majority inexplicably then takes over the factfinding function and concludes that "Martin and Halsey, acting concurrently and in a concerted manner, committed acts found to be torts—acts which produced an indivisible harm to both plaintiffs." *Ante* at 27. If the majority is correct that the jury should have been instructed on that issue, then the majority is certainly in error in not remanding this matter back to the trial court for a retrial on that issue, rather than taking over the factfinding function itself.

It is conceded by all parties on appeal that the mother could not be held liable for any damages or violation of the federal law, 42 U.S.C. § 1983. Only those acting under color of state law can violate 42 U.S.C. 1983, and she was not. Her damages could only have resulted from state tort law. Conversely, all parties on appeal, and the majority of this Court, agree that Officer Martin is immune from state tort law claims, and the only source of his liability is under 42 U.S.C. § 1983, and he was found by the jury to have caused only minimal damages from that violation. Today's opinion finding joint and several liability for these two defendants circumvents both these non-liabilities by making an immune governmental employee liable for an individual's intentional torts and the private individual liable for the government's so-called "constitutional torts." That result is wholly unprecedented in the law.

Today's holding has already been partially neutralized by the legislature's 1980 amendment to the Idaho Tort Claims Act which states:

"[T]he governmental entity and its employee shall be subject to liability only for the pro rata share of the total damages awarded in favor of a claimant which is attributable to the act or omission of the employee...." I.C. § 6–903(b).

This statutory abrogation of joint and several liability, at least as to governmental entities and their employees, was enacted March 28, 1980, effective July 1, 1980. 1980 Idaho Sess.Laws, ch. 218, p. 490. Upon the filing of a petition for rehearing in this matter, we will no doubt have to consider the question of whether or not that amendment applies to the circumstances in this case which occurred on March 11, 1980.

### III

I also dissent from Part IV of the majority opinion on attorney fees. While the plaintiff is indeed entitled to attorney fees under 42 U.S.C. § 1988, the amount should be in proportion to the limited theory on which the plaintiffs prevailed against Officer Martin. Throughout the case the plaintiffs alleged and pursued a full ten causes of action against three defendants, Officer Martin, the City of Boise, and the mother. The total attorney fees expended by plaintiffs were $15,783. Much effort was directed against the City of Boise, which was dismissed from the case. Much effort was directed toward Officer Martin on other theories on which plaintiffs lost. Effort was also directed against the mother. Plaintiffs prevailed against Officer Martin on only one cause of action to prove damages of only $1,668.50. Yet, Officer Martin was saddled with 90% of the plaintiffs' attorney fees for upwards of 250 hours expended by two attorneys. *See All American Realty, Inc. v. Sweet,* 107 Idaho 229, 687 P.2d 1356 (1984) (140 hours to process a summary judgment "unjustified"). The hours claimed by plaintiffs would represent an attorney working nearly a full two months to process this two-day trial. The award of 90% of the attorney fees represents an abuse of discretion

on the part of the trial court, *All American Realty v. Sweet, supra,* and the issue should be remanded for the trial court to make a more accurate and realistic allocation of fees.

DONALDSON, C.J., concurs.

### ON DENIAL OF APPELLANT'S PETITION FOR REHEARING

BISTLINE, Justice, dissenting.

Appellant's petition for rehearing has brought to our attention the failure of the Court to respond to the request for attorney's fees. That inadvertence should be corrected.

A majority of the Court has voted against an award of attorney's fees to the appellant on an appeal wherein he was clearly the prevailing party. It seems to me that such fees are mandated under 42 U.S.C. § 1988 and both federal and state cases which have applied the provisions of that section.

HUNTLEY, J., concurs.